UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GEMELAS, et al., | ) | Case No. 1:08-cv-00236 |
|     Plaintiffs, | ) | |
| vs. | ) | CLASS ACTION |
| THE DANNON COMPANY, INC., | ) | |
|     Defendant. | ) | Judge Dan Aaron Polster |

**OBJECTIONS OF DENISE FAIRBANK
TO SETTLEMENT
AND NOTICE OF INTENT TO APPEAR**

COMES NOW, Denise Fairbank[1] ("Objector,") Class Member in this action, by and through her undersigned counsel, and hereby files these Objections to the Proposed Class Action Settlement, gives notice of her counsel's intent to appear at the June 23, 2010 fairness hearing. In support of her objections, Objector states as follows:

I.  **SUMMARY OF OBJECTIONS**

For the following reasons, inter alia, the Settlement Agreement is not fair, reasonable and adequate.

1. Claims administration process fails to require reliable oversight, accountability, and reporting about whether the claims process actually delivers what was promised.

2. No timeframe for completing administration is set.

3. Attorney fees of $10,000,000 would be paid upon the Effective Date, regardless of when -- or whether -- Class Counsel's clients, the Class Members, receive relief.

---

[1] Objector's name, address, telephone number and signature appears on the attached Exhibit A.

  4  No amount of attorney fees is to be withheld to assure Class Counsel's continuing oversight and involvement in implementing settlement.

  5.  Attorney fee does not depend upon how much relief actually is paid to the Class Members -- the people who, unlike any cy pres beneficiaries, actually are Class Counsel's clients.

## II. SUMMARY OF RELIEF

The relief consists of common fund of $35,000,000, which could be increased by as much as $10,000,000 more, from which Class Members would be paid on their claims after costs and fees are paid. No mechanism is in the Settlement Agreement to assure that claims will be processed promptly and correctly. The Agreement also fails to provide for any public disclosure to the Court or Class Members about when and how the claims administration is proceeding. Absent such essential safeguards, there is no way to know or incentive to assure, that Class Members actually receive what is promised.

## III. SUMMARY OF ATTORNEY FEES PROVISIONS

Defendants agree not to oppose a request of $10,000,000 for attorney fees and expenses. Class Counsel would receive their full $10,000,000 fee before their clients get paid, and without regard to how or when the claims process is administered.

The Settlement Agreement fails to require that some fees be withheld pending Court approval of a report by Class Counsel to the Court concerning distribution of relief. Such a provision is critical because it acknowledges that a Settlement Administrator has control of implementing the settlement (after the administrator processes claims and verifies eligibility). Such a monitoring requirement provides for accountability, and recognizes the possibility that minimal amounts of relief will be redeemed.

IV.     **OBJECTIONS**

In Amchem v. Windsor, 117 S.Ct. 2231, 2248 (1997), the Supreme Court held that all of the requirements of class certification must be met, even if the certification is sought only for the purposes of settlement. Thus, those seeking certification must satisfy four prerequisites. First, the class must be so numerous that joinder of all members is impracticable; second, common questions of fact and law must predominate over any questions affecting only individual members; third, the representative parties must fairly and adequately protect the interest of the class; and forth, class action must be the appropriate method for the fair and efficient adjudication of the controversy.

The Proposed Class Action Settlement is inadequate, unfair and unreasonable for the following reasons.

A.      **Claims Process Is Intended to Minimize Relief.**

The claims process requires too much from Class Members to avoid losing relief. Class Member must obtain and complete and submit claim forms. Obviously the Defendant is expecting, or at least hoping, that the frustrated Class Member will simply abandon the relief because the process is more confusing and troublesome than it's worth.

As both class counsel and defense counsel must be perfectly aware, a claims form process results in far less that 10% of the claims forms being returned. Steve Tilghman, a class action settlement administrator who has performed over 175 settlements, testified that the "vast majority of settlements that required filing a notice of claim" resulted in less than 10% of the class members sending in the claims form. Sylvester, et al. v. Cigna Corp., 369 F.Supp.2d 34, 44 (D.Me. 2005).

### B.      Attorneys fees cannot be approved.

#### 1.      Value of settlement must affect amount of fees.

Contingency fees should be payable according to the value of results actually received by Class Members.  Regardless of the lodestar, or the amount of work, or the success in concluding complex litigation, or the theoretical gross amount of value, or the number of claims submitted, fees should be paid only according to the value which actually reaches Class Members' pockets.  If Class Members cannot obtain significant quantifiable relief, because the relief is too confusing, or the restrictions and qualifications are too onerous, their lawyers have not provided a service to them.  No matter how hard lawyers work, if they do not provide worthwhile relief to the Clients, the Class Members, they should not be paid in regard to those Class Members.  If the relief is delivered, but is less than promised, then the fee should decline accordingly.[2]  The purpose of the settlement is to obtain value for the Class Members, as well as for the Defendant and Class Counsel.  Certainly the contingency *cy pres* relief is not insignificant.  However, the *cy pres* beneficiaries are not Class Members, so they are not clients of the Class Counsel.  Class Counsel's fee should depend upon the amount of benefits obtained for their clients, not upon benefits obtained for strangers.

#### 2.      The Class Must be Protected

The Court also may wish to view this case as similar to a "common fund" case and determine the amount of the fee as a portion of the total recovery to the Class Members -- not to the *cy pres* beneficiaries, who are strangers to this case.  Certainly, the

---

[2] In In Re: Excess Value Insurance Coverage Litigation, Case No. M-21-84-(MDL No. 1339)(S.D.N.Y. Nov. 2, 2005), Judge Richard M. Berman chose to wait for the coupon claim process to end so he could determine the actual benefits paid to the class before deciding the amount of attorney's fees to award.

Page 4 of 15

settling parties argue that the attorney fee is entirely separate from the relief for the Class. This position is naive at best, and disingenuous at worst. A defendant is concerned only with the total amount being paid, without regard to how much goes to the class and how much goes to the attorneys. Every dollar paid to attorneys is unavailable to the class, thereby demonstrating a direct and inverse relationship between the amount of relief and the amount of attorney fee. So the Court's fiduciary role is critical. In this instance, wherein no evidence can be submitted about the value actually paid to Class Members until the claims process is complete, the Court should defer ruling on the fees until receiving evidence about the actual benefit received by Class Members.

In this case, Class Counsel is being paid an amount that has no apparent relationship to the amount of the relief which ultimately would be paid to Class Members. Dozens of cases have confirmed and identified this fiduciary role. For example:

> Before considering the proper methodology for awarding attorney's fees out of a common fund, the Court feels compelled to define its role in these proceedings. When an attorney makes a claim for fees from a common fund, his interest is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class. Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993). This divergence of interests requires a court to assume a fiduciary role when reviewing a fee application because there is often no one to argue for the interests of the class: class members with small individual stakes in the outcome will often fail to file objections because they lack the interest or resources to do so and the defendant who contributed to the fund will usually have scant interest in how the fund is divided between the plaintiffs and class counsel." In Re Copley Pharmaceutical, Inc. 1 F.Supp.2d 1407 (Wyoming 1998). (emphasis added.)

In Wise v. Popoff, et al. 835 F. Supp. 977 (E.D. Mich. 1993) the court describes the roles as follows:

> An attorney's role changes once he files a fee petition. No longer a fiduciary for his client, he becomes nothing more complex than another claimant against the fund created for the client's benefit. The court must, in turn, become "the fiduciary for the fund's beneficiaries and must carefully monitor disbursement to the attorneys by scrutinizing the fee applications." Skelton v. General Motors Corp., 860 F 2d 250, 253 (7th Cir. 1988), cert denied, 493 US 810, 110 S. Ct. 53, 107 L. Ed. 2d 22 (1989). A court should not "rubber stamp" fee applications. In re Cincinnati Gas & Electric Co. Securities Litigation, 643 F. Supp. 148, 152 (S.D. Ohio 1986).

The fact that the settling defendant may agree with the fee application (or, as in this case, be persuaded to remain silent about it) is irrelevant to the Court's analysis because the defendant, having already paid the settlement amount, has little interest in the portion of the fund that Class Counsel is allowed to retain. This Court, therefore, must act as a fiduciary to the Class, carefully evaluating the basis for the fee amount. The Court should at least determine what the lodestar amount is (hours expended time hourly billing rate) and whether that bears a rational relationship to the fee requested. The Court must examine not only the amount of time expended, but by whom it was expended. That is, was it by a partner, an associate or a contract attorney, and were the rates reasonable for the locale?

### C. Fees must be paid in installments.

Class Counsel must be paid soon for the considerable amount of hard work already done. However Class Counsel should not be paid immediately when work remains to be done. To assure the Class, the Court, and the public that relief is being delivered accurately, completely and on time, fee payments must be staggered. The concept has worked well in many class actions to maintain the integrity of settlement administration.

Judge Fernando Gaitan reacted to a similar suggestion by objectors in <u>In re Wireless Telephone Federal Cost Recovery Fees Litigation</u>, MDL 1559 (W.D. Mo. April 20, 2004), <u>aff'd on other grounds</u>, 922 F.3d 922 (8th Cir. 2005) ("the <u>Nextel</u> case,") when he directed the parties to respond to an objector's argument that fees must be staged, rather than paid in a lump sum. The settling parties responded by amending the proposed agreement to provide 75% upon final approval of the settlement, and 25% upon completion of all post-settlement obligations.

This common-sense concept has applied successfully in many other class actions. In <u>Richard Duhaime v. John Hancock Mutual Life Insurance Company, et al.</u>, 177 F.R.D. 54 (D.Mass 1997), the federal court withheld 40% of the contemplated fee for a year so the court could review the quality of representation provided by Lead Counsel and the results achieved for the class. Similarly, in <u>Ace Seat Cover Co., Inc., et al. v. The Pacific Life Insurance Company</u>, Case No. 97-CI-00648 (Kenton Cir. Ct. Ky., Nov. 19, 1998), the court ordered 20% of the fees withheld until completion of the settlement agreement. In <u>In re: Prudential Ins. Co. of Am. Sales Practices Litig.</u>, 962 F.Supp. 450 (D.N.J. 1997), <u>aff'd</u> re class certification and settlement but <u>vacated and remanded</u> re attorneys fees, 148 F.3d 283 (3rd Cir. 1998), the court ultimately ordered that 50% of the attorney's fees be withheld. In <u>In Re: PNC Financial Services Group, Inc. Securities Litigation</u>, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D. filed April 17, 2007), Judge Cercone ordered part of the class counsel's fee withheld at interest pending entry of an order of distribution, as had been suggested by an objector in that case.

At least 20 percent of the fee should be withheld pending completion of the claims-submission process. Then Class Counsel can report to the Court on the amount of

relief actually paid to Class Members. Another 20 percent should be withheld pending distribution of all relief -- including the *cy pres* relief. By staggering the fees, Class Counsel can be paid for work that has been done. But Class Counsel cannot get the full benefit of the Settlement until their clients, the Class Members, get the full benefit of the Settlement. Basic, prudent business practices dictate that people should not be paid fully until the job is done completely.

### D. Oversight Will Assure Relief is Delivered by Claims Administrator.

For the reasons described in the cases above, and to demonstrate the integrity of the Settlement administration, fees paid to the Claims Administrator must be staggered to show the Class, the Court and the public that the Agreement is being administered promptly, correctly and completely. A classic and poignant example of the need for oversight appeared in Vaughn v. American Honda Motor Co., Inc., Case No. 0-04CV-421 (U.S.D.C. E.D. Tex. Marshall Division.) Shortly before the fairness hearing, the administrator suddenly disclosed an error, having failed to give notice to 500,000 of the 6,000,000 class members. On May 2, 2007, the court ordered the fairness hearing to be postponed from May 30, 2007 to August 21, 2007 to allow notice to be sent, and to renew the deadlines for opting out or filing objections. Obviously, if the error had occurred after a settlement were approved, then the court, the class members, the public, and maybe even the class counsel, might never had known. The result would be that the settlement would fail without a fundamental mechanism for accountability.

In the instant case, the Court must maintain jurisdiction, and at least minimal oversight, to assure that the Settlement is implemented as promised. When the final

report is delivered, the Court can order payment of the last attorney fee payment and can make the Defendants' release final.

### E. Monitoring and Reporting are Essential.

To have any credibility, the Settlement must require reports to establish that it is performing as promised. The reports must be delivered to the Court so they are available to the public, including Class Members. Progress and results must be a condition of awarding benefits to the Defendant (the Release) and Class Counsel (attorney fees) because a Settlement that benefits only Defendant and Class Counsel, but not Class members, is not fair, reasonable or adequate. The reports need not be elaborate, but must show what efforts and results have occurred in distributing relief.

In the Nextel case, Judge Gaitan directed the parties to address the objectors' concerns about administration oversight and reporting. The parties submitted a joint response to the court's order, agreeing to modify their settlement agreement to resolve those issues. For instance, their settlement agreement was changed to provide:

> Further, Class Counsel shall file a report with the Court setting forth the results of the discovery regarding Defendants= provision of benefits to class members, together with supporting information showing its compliance with the Settlement Agreement, within fifteen (15) days following the completion of discovery. Once the Court is satisfied with Defendants= and Class Counsel=s performance under the Settlement Agreement, the Court shall authorize and direct Defendants to pay the final twenty-five percent (25%) of the attorneys' fees due Class Counsel as set forth in Paragraph 13.

Upon approving the modified settlement, Judge Gaitan awarded attorneys fees to Class Counsel.[3]

---

[3] In the Nextel case, Judge Gaitan awarded to class counsel $2,500,000 (which is 1.2% of

**F.     Deadlines Must Benefit Class, not Just Defendant and Counsel.**

The Settlement unfairly favors Defendant and Class Counsel, at the expense of Class Members, as demonstrated by the schedule specified in the Settlement Agreement. For instance, claims must be submitted within 100 days of entry of judgment, or relief is forfeited. The deadline benefits the Defendant, but not the Class Members. Consider, also, the time for paying attorney's fees: On the Effective Date, which is long before Class Member receives relief.

Conspicuously absent are the deadlines which would favor or benefit Class Members. For instance, there is no deadline for processing claims. The Administrator could spend weeks, months, or years. The fully paid Class Counsel will have no financial incentive to oversee how promptly the Administrator performs, or to report the progress to the Court. With no deadlines, and no incentives, the Class Members -- who allegedly were victimized by Defendants -- would be victimized again. No Settlement which leaves such a gaping and critical hole in the administrative process can be considered reasonable or adequate.

**G.     Adoption of All Other Objections**

This Objector adopts all bona fide objections filed by other Class Members in this case and incorporates them by reference as if they appeared in full herein.

**V.     OBJECTORS' VALUE TO CLASS-ACTION PROCESS.**

Generally speaking, class counsel and defense counsel, in their zeal to win approval of an agreement in a class action, often overlook or deny the importance of objectors to the class-action process. Indeed, in some cases, the class counsel and

---

the class recovery) in response to a request for $3,500,000 (1.7% of the class recovery.) The remaining $1,000,000 was awarded to objectors who made contributions to improving the settlement.

defense counsel may even denounce objectors' counsel as "serial objectors," or use some other pejorative epithet.[4] However, settlements, such as this one, can be so complicated that only lawyers who have evaluated and participated in many class action lawsuits can provide insightful and useful analysis, thoughtful alternatives, and a context within which to identify flaws or oversights in a settlement. Objectors can assist a court in fulfilling its duty to examine the settlement as an independent and impartial neutral.

Thus, objectors provide great value to the class action process. Without resolving the issues described above, the Settlement could become a complete sham and no one would be the wiser. The judicial system would have failed Class Members by requiring no mechanism for assuring that the agreed relief ever is received by the persons who should benefit. The foregoing observations are submitted to improve the Settlement, and thereafter to guarantee it will work, and to show when and how well it is completed. These improvements are developed only now because objectors offer the last opportunity to preserve the adversary process which is necessary to test the fairness of a proposed settlement.

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would." Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P., 212 F.R.D. 400, 412 (E.D. Wis. 2002). "Class counsel and defendants' counsel may reach a point where they are cooperating in an effort to consummate the settlement." Id. "Courts, too, are often inclined toward favoring the settlement, and the general atmosphere may become largely cooperative." Id.

"Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally." Great Neck, 212 F.R.D. at 412. "From conflicting points of view come clearer thinking." Id. at 412-13. "Therefore, a lawyer for an objector who

---

[4] Such *ad hominem* attacks can be presumed to arise only in the absence of legitimate, persuasive and substantial responses to the merits of the objections.

raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service." Id. at 413.

"The law generally does not allow good Samaritans to claim a legally enforceable reward for their deeds." Reynolds v. Beneficial Nat. Bank, 288 F.3d 277, 288 (7th Cir. 2002) (Posner, C.J.). "But when professionals render valuable albeit not bargained-for services in circumstances in which high transaction costs prevent negotiation and voluntary agreement, the law does allow them to claim a reasonable professional fee from the recipient of their services." Id. "That is the situation of objectors to a class action settlement." Id.

In other cases, objectors' counsel have been recognized where their efforts have augmented the common fund or otherwise improved a class action settlement. See, e.g., Bowling v. Pfizer, Inc., 922 F.Supp. 1261, 1285 (S.D. Ohio), aff'd, 102 F.3d 777 (6th Cir. 1996); In re Domestic Air Transp. Antitrust Litig., 148 F.R.D. 257, 359-60 (N.D.Ga. 1993). Indeed, even in cases where objectors appeared but the settlement terms were not altered, courts have recognized their value in that their presence improved the process and assisted the court in its scrutiny of the settlement. See County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1325-27 (2nd Cir. 1990); Howes v. Atkins, 668 F.Supp. 1021, 1027 (E.D.Ky. 1987); Frankenstein v. McCrory Corp., 425 F.Supp. 762, 767 (S.D.N.Y. 1977); see also Domestic Air, 148 F.R.D. at 359. In In Re: PNC Financial Services Group, Inc. Securities Litigation, Case No. 2:02-cv-00271-DSC (U.S.D.C. W.D. Pa. W.D.), wherein, Judge Cercone made a specific finding "in recognition of the benefit to the Class created by the objection and the time spent thereon by objector's Counsel . . ." and thereby awarded compensation to objector's counsel.

Accordingly, Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the proposed Settlement Agreement, identifying problems with the proposed Settlement Agreement, and presenting substantial and workable solutions.

Just as objectors' counsel should be encouraged to assist the class-action process, so should individual class members be encouraged to participate. Accordingly, an incentive award is appropriate for Objector herein for her willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI. CONCLUSION

This Objector hereby adopts, subscribes to and incorporate into these Objections all other well-taken, timely filed objections. Objector also requests an incentive award as a representative of Class Members in this litigation.

WHEREFORE, Objector respectfully requests that this Court:

  A. Upon proper hearing, sustain these Objections;

  B. Upon proper hearing, enter such Orders as are necessary and just to adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and unreasonableness of the proposed settlement.

  C. Award an incentive fees to Objector for her service as a named representative of Class Members in this litigation.

Dated: May 24, 2010       Respectfully submitted,

              /s/ Edwasrd F. Siegel
             Edward F. Siegel (Ohio Bar 0012912)
             27600 Chagrin Blvd., Suite 340
             Cleveland OH 44122
             (216) 831-3424
             (216) 831-6584 fax
             efsiegel@efs-law.com

             Kenneth E. Nelson (Mo. Bar 31993)
             Nelson Law Firm, P.C.
             2900 City Center Square
             1100 Main Street
             Kansas City MO 64105
             (816) 421-7225
             (815) 842-6274 fax
             kennelson@mclaw.com
             Attorneys for Objector Denise Fairbank

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed with the Court's electronic system on this 24th day of May, 2010 and was by such system filed on all other counsel of record.

By: /s/ Edward F. Siegel