UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GEMELAS, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. 1:08-cv-00236 |
| Plaintiff, | ) ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | Judge Dan Aaron Polster |
| THE DANNON COMPANY, INC., | ) ) | |
| Defendant. | ) ) ) | |
| | ) | |

**THE DANNON COMPANY, INC.'S RESPONSE TO OBJECTIONS
TO PROPOSED SETTLEMENT**

- 1 -

## I.      Introduction

The Amended Stipulation of Settlement, filed January 20, 2010, provides for monetary relief to Class Members, significant changes to the marketing and labeling of the Products, injunctive relief, and a significant and substantial cy pres distribution.  (Doc. No. 42) The agreement the Parties reached is fair, reasonable, and adequate as it represents a compromise of disputed claims, provides a comprehensive range of significant and substantial relief presently available without the risk of further litigation, and avoids the significant expenses and delay that would be engendered by years of litigation.

The work of the Parties in reaching this Settlement, and the substantial and significant benefit to the Class, should not be overshadowed by the few Objections to its structure.  There are very few Objections to the Amended Stipulation, thus signifying that the Settlement relief is, and has been, overwhelmingly approved by the Class Members.  Some of the Objections actually support the marketing and labeling of the Products, and thereby specifically contradict the allegations underlying the lawsuit.  *See* Carver Objections, at 1; Boyd Objections, at 1.  The majority of the remaining Objections are asserted on behalf of Class Members by Edward Siegel, a self-described class action objection attorney.  *See* Falkner Objections, at 10; Fairbank Objections, at 14.

The proposed settlement is in substance, fair, reasonable, and adequate.  The Court should approve it.

## II.     Sixth Circuit Standard for Approval of Class Action Settlement

A court should approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e);  *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of*

- 2 -

*Am. v. General Motors Corp.* 497 F.3d 615, 631 (6th Cir. 2007); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986).

In evaluating the fairness, reasonableness, and adequacy of a class action settlement, courts in the Sixth Circuit refer to the following factors: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)); *see also Lonardo v. Travelers Indem. Co.*, --- F. Supp. 2d ---, 2010 WL 1416698, at *8-9 (N.D. Ohio Mar. 31, 2010) (listing eight factors); *Reed v. Rhodes*, 869 F. Supp 1274, 1279 (N.D. Ohio 1994) (listing seven factors and stating that "[t]he Court is not required to reach ultimate conclusions of fact or law on the issues in the case, but instead should examine the overall fairness and adequacy of the settlement in light of the likely outcome and costs of continued litigation"); *Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1 (N.D. Ohio 1982) (approving a class action settlement in light of the damages of class members, the range of possible recoveries, and the complexity, expense and likely duration of the litigation).

"The law generally favors and encourages the settlement of class actions." *Reed*, 869 F. Supp. at 1279 (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir. 1982)).  Because of the potential cost and risk of lengthy ongoing litigation, settlement is in fact the "preferred means of dispute resolution," especially in complex class action cases.  *In re Inter-Op Hip Prothesis Liability Lit.*, 204 F.R.D.

- 3 -

330, 351 (N.D. Ohio 2001) (quoting *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), *cert denied*, 459 U.S. 1217 (1983)).

### III.   The Proposed Settlement is Fair, Reasonable, and Adequate

### A.   Cy Pres

The Amended Stipulation creates a thirty-five-million dollar fund to satisfy claims. Amended Stipulation § IV.A.(2), at 8-9.  If the total amount of claims is less than thirty-five-million dollars, the Settlement currently provides that Dannon will donate Products, in the amount equal to the excess funds, to charities that help feed the poor in the United States. Amended Stipulation § IV.A.(3)(a), at 9.

Certain Objectors erroneously assert that the distribution of Products--as distribution of excess funds--is inadequate.  *See* Cope Objections, at 2-3; Falkner Objections, at 9; Waters Objections, at 1; Wilson Objections, at 7.  First, the Objectors contend that while the fund exists to benefit Class Members, the donations to charities will not directly benefit the Class.  *See* Cope Objections, at 2; Falkner Objections, at 9.  Second, the Objectors contend that valuing the Products at full retail will result in inadequate compensation.  *See* Cope Objections, at 3; Falkner Objections, at 9; Wilson Objections, at 7.  None of these objections has merit.

Cy pres awards are a common mechanism in class action settlements to distribute unclaimed funds.  *See* Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:20 (4th ed. 2002).  Here, the cy pres is designated to go to charities that help feed the poor in the United States.  The Parties jointly chose this form of cy pres distribution, and the Court granted preliminary approval of it.  This designation is fair and reasonable.  Courts routinely approve settlements with cy pres distributions to charity, and this form of cy pres is common in food products cases.  *See, e.g.*, *In re Pharmaceuticals Indus. Average Wholesale Price Litig.*, 588 F.3d

- 4 -

24, 36 (1st Cir. 2009) (approving cy pres fund designated to benefit undetermined charities "funding cancer research or patient care" that court would approve in future); *Ohio Pub. Interest Campaign*, 546 F. Supp. at 5 (approving settlement agreement providing that excess funds be contributed as food or cash to charitable organizations that give food to the needy); *In re Tyson Foods, Inc. Chicken Raised Without Antibiotics Litigation*, No. RDB-08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010) (approving settlement agreement in a food products case of alleged false advertising with cy pres distribution of defendant's food product to charities that provide food to the needy), attached hereto as **Exhibit A**.

The distribution of cy pres to charity is a fair use of the excess funds. After all claims are paid, Class Members do not have a legal right to the remaining funds. *See Powell v. Georgia-Pac. Corp.*, 119 F.3d 703, 706 (8th Cir. 1997) ("neither party has a legal right to the unclaimed funds"); *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 811 (5th Cir. 1989) ("none of the parties in this case has a legal right to the balance of the fund"). Nevertheless, the Objectors argue that the excess funds should be distributed to a cause that is likely to benefit "silent class members," those Class Members who do not submit claims. *See* Cope Objections, at 2. In making this argument, the Objectors mistakenly cite the standard for a court-initiated distribution of cy pres that may be used when the settlement agreement is silent about the distribution of excess funds. *Id*. Here, however, where the Parties memorialized the agreement in the Amended Stipulation after arm's-length negotiations, the standard is whether the Settlement is "fair, reasonable, and adequate." *See Lonardo*, 2010 WL 1416698, at *8-9 (stating that once the court provides an opportunity for class members to object, the question is "simply whether the Settlement Agreement is fair, reasonable, and adequate"). In applying this standard, the Court may consider more than the direct benefit to Settlement Class Members. Indeed, one of the relevant factors in evaluating a settlement agreement is "the public interest." *See Int'l Union*, 497 F.3d at 631;

- 5 -

*Lonardo*, 2010 WL 1416698 at *8-9; *Reed*, 869 F. Supp. at 1279.  Distributing food to non-profit organizations, after submitting payment to all Claimants, is fair, reasonable, and in the public interest.  Other courts have approved similar donations in food product cases.  *See, e.g.*, *Ohio Pub. Interest Campaign*, 546 F. Supp at 5; *In re Tyson Foods*, 2010 U.S. Dist. LEXIS 48518 at *6.  This Court should approve this designation here.

Even if the standard for reviewing a cy pres designation were the benefit to silent class members, which it is not, that standard would be met here.  Dannon will donate Products to non-profit organizations that provide food to a vast number of needy individuals.  Given the broad range of purchasers of the Products, many silent class members are likely to benefit from this distribution.  The silent class members who do not receive food directly will receive a significant benefit from the sustenance provided to the members of their communities.  Of course, it is not possible to provide a direct benefit to each silent class member, thus the purpose behind a cy pres designation.  Nonetheless, the designation will benefit many silent class members, and is fair, reasonable, and adequate.

The Products distributed to non-profits as cy pres will be valued using the retail price.  This valuation is appropriate given the logistical difficulties and transaction costs associated with identifying the non-profit organizations and delivering the Products across the United States.  Dannon ordinarily does not deliver its Products directly to consumers or individual retail locations, much less food banks and other non-profits.  This will entail an enormous additional expense.  If wholesale price were used, the cost to Dannon of cy pres would far exceed the amount the Parties agreed to.

LA: 642058v1

B.    **Claims Process**

Certain Objectors assert that the claims process will minimize relief.  The Objectors attempt to support this assertion on the following three grounds: (1) to receive the maximum benefit, Claimants must produce grocery receipts which they may not have retained; (2) the payout of claims will be below the limit of the fund; and (3) the claims process lacks the necessary oversight to ensure proper administration of claims.  *See* Baker Objections, at 1; Fairbank Objections, at 3, 9-10; Falkner Objections, at 8; Miller Objections, at 1.

The claims process is fair, reasonable, and adequate.  The Amended Stipulation provides that the Claims Administration Protocols will govern the claims process.  Amended Stipulation § IV.A.(5)(b), at 10.  The Class Action Settlement Administrator, The Garden City Group ("Garden City"), will oversee the claims process in accordance with the Protocols.  *Id.* § V.C., at 18.  The Parties are entitled to observe and monitor the performance of the Administrator to ensure compliance with the Amended Stipulation and the Protocols.  *Id.,* Ex. B, Claims Administration Protocol § B.12, at 4.  Further, the Court reserves jurisdiction over implementation, administration and enforcement of the Judgment and Amended Stipulation.  *Id.* § XI.J., at 25.  The Claims Administration Protocols, along with the oversight of the neutral Administrator and the Court, will ensure the fairness of the claims process.

The Parties selected, and the Court has appointed, Garden City to oversee the claims process because of Garden City's experience and proven track record in the administration of class action settlements.  Garden City has administered hundreds of consumer product class action settlements, using technology and procedures that ensure that claims are processed properly.  *See* Garden City Group Website, "Consumer Product Class Action," http://www.gardencitygroup.com/pages/expertise/ class-action/consumer-and-product.php (last

- 7 -

visited June 4, 2010).  In the course of over twenty-five years, Garden City has processed tens of millions of claims and distributed billions of dollars in class action settlement funds.  *See* Garden City Group Website, "Our Story," http://www.gardencitygroup.com/pages/about-us/our-story.php (last visited June 4, 2010).  By retaining Garden City, the Parties have ensured that the claims process will be administered fairly, efficiently, and in accordance with the Claims Administration Protocol.

Every single Class Member has the opportunity to present a claim.  Class Members may seek one of the following three types of claims: (1) up to fifteen dollars without an affirmation or receipt; (2) from fifteen to thirty dollars with an affirmation of purchase; and (3) from thirty to one-hundred dollars with proof of purchase.  Amended Stipulation § IV.A.(1), at 8.  The proof of claim requirements are minimal, yet some controls are inherently required to prevent fraud. Even with these minimal controls, the individual recovery is substantial given the price of the Product, the difference (if any) between the price paid for probiotic yogurt versus the price that would have been paid for a different kind or brand of yogurt, and the fact that under certain circumstances Dannon offers consumers a money-back guarantee. The consumers who were dissatisfied with the Activia product periodically had the option to recover the purchase price under Dannon's money-back guarantee.  The consumers who continued to purchase Activia without requesting a refund from Dannon presumably were satisfied with the Product.  The three-tiered claims process is, thus, fair, reasonable, and adequate.  *See In re Tyson Foods*, 2010

---

[2] Under that money-back guarantee, if consumers are not satisfied with the product after two weeks of use, Dannon will refund the purchase price, up to twelve dollars.  Activia, http://www.activiachallenge.com (last visited June 4, 2010).

LA: 642058v1

U.S. Dist. LEXIS 48518 at *6 (approving a food products class action settlement with a three tiered claims process requiring receipts for claims over ten dollars).

The claims process is designed to maximize recovery in light of the large number of Class Members and the value of individual claims. The Objections cite evidence suggesting that the class action claims process generally results in only a small percentage of class members submitting claims. *See* Falkner Objections, at 3. This general evidence does not render the negotiated Settlement here unfair. The Parties designed the claims process in the Amended Stipulation to maximize payments to the Class in light of the difficulty of reaching the members of a large class with relatively low-value individual claims. For example, the on-line claims submission provides an easy way for Class Members to submit claims, as does the straight-forward claims form. *See* Amended Stipulation, Ex. A. The twelve-week notice plan, based on the target market of the product, will provide notice of the Settlement to a large number of Class Members. *See id.,* Ex. G (providing for notice via 82,550,308 magazine circulations, and an estimated 109,027,633 internet impressions). Moreover, any excess funds not distributed to Claimants will be distributed as cy pres to non-profit organizations. In no case will the funds revert back to Dannon. The claims process as detailed in the Amended Stipulation is fair, reasonable, and adequate.

### C. Injunctive Relief

Two Objectors assert that the injunctive relief is inadequate because the relief extends for three years. *See* Falkner Objections, at 8; Padgett Objections, at 3.

The Amended Stipulation provides for a variety of injunctive relief limiting advertising claims and requiring supplemental information regarding the product. Amended Stipulation § IV.B, at 12-16. The injunctive relief is provided in addition to the thirty-five million dollar

Settlement Fund.  Courts will not maintain jurisdiction indefinitely; therefore it is necessary to limit the duration of this injunctive period.   The three-year injunctive period is fair, reasonable, and adequate.  Moreover, the Amended Stipulation contemplates that if the Federal Trade Commission or State Attorney Generals obtain conflicting injunctive relief, that relief will govern.

        **D.**      **Class Members**

Two Objectors argue that the definition of Settlement Class Members is overbroad because it allows individuals who made purchases after the Stipulation of Settlement to join the Class.  *See* Miller Objections; Waters Objections.  The Objectors are concerned that individuals will learn of the settlement, and then purchase the Products in order to submit a claim for cash recovery.

The Class is defined as all persons who purchased Products up until the date notice is provided to the Class.  Amended Stipulation § II.A(4), at 3.  The parties set that date at April 23, 2010.  The definition of Settlement Class Members is fair and reasonable given the need to ensure that all consumers with valid claims have an opportunity to submit the claim for cash recovery.  The small theoretical risk of fraud from someone purchasing a product (after notice was disseminated to the Class) simply to make a claim is outweighed by the need to provide an opportunity for payment to those individuals who learn of the Settlement upon receipt of notice, as would be expected in almost every case.

Moreover, there is no evidence of fraud in the submission of claims.  The claims administration process is set up to determine if a fraudulent claim is submitted and, if so, to reject it.  *See* Amended Stipulation, Ex. B, Claims Administration Protocol §§ B.92, B.93, at 3.  Here, the claims form asks the consumer for the date of purchase.  *Id.*, Ex. A.  If the date listed is

during the gap period between initial settlement approval in January and the end of the notice period in April, the Claims Administrator can flag those claims and ask follow up questions to root out fraud.

### E.     Settlement Amount

Two Objectors contend that the amount of the Settlement Fund is unfair in light of Dannon's pre-existing money-back guarantee, the absence of any punitive damages to deter Dannon from future misconduct, and the absence of a guaranteed floor settlement payment.  *See* Falkner Objections, at 3; Padgett Objections, at 2, 5.

First, thirty-five-million dollars and injunctive relief requiring Dannon to change its labels and advertising claims is an enormous settlement.  In fact, it has been widely reported as the largest class action settlement for a suit alleging false advertising of a food product.  *See, e.g.*, Consumeraffairs.com, "Dannon Settles Activia Yogurt Suit," (Sept. 19, 2009), http://www.consumeraffairs.com/news04/2009/09/dannon_suit.html (last visited on June 4, 2010).  Second, while Dannon periodically offered consumers of Activia a money-back guarantee, the Settlement provides additional relief by giving money to those consumers who did not take advantage of the guarantee.  Third, the thirty-five-million dollar Settlement Fund is a guaranteed payment; Dannon must pay this amount, in the form of either cash or product, regardless of the number of claims submitted.  Amended Stipulation § IV.A.(3), at 9.

LA: 642058v1

**IV.     Conclusion**

For the foregoing reasons, the Court should reject the Objections to the Amended

Stipulation.

Respectfully submitted,

s/ David D. Yeagley
Michael N. Ungar (0016989)
David D. Yeagley (0042433)
ULMER & BERNE LLP
Skylight Office Tower
1660 W. 2nd Street, Suite 1100
Cleveland, Ohio 44113
(216) 583-7000 (phone)
(216) 583-7001 (fax)
mungar@ulmer.com
dyeagley@ulmer.com

Angel A. Garganta, *pro hac vice*
Beth H. Parker, *pro hac vice*
ARNOLD & PORTER LLP
90 New Montgomery Street, #600
San Francisco, CA  94105
(415) 356-3000
(415) 356-3099
angel.garganta@aporter.com
beth.parker@aporter.com

Bruce A. Friedman, *pro hac vice*
BINGHAM MCCUTCHEN LLC
1620 26th Street, 4th Floor
Santa Monica, CA  90404
bruce.friedman@bingham.com

Attorneys for Defendant
The Dannon Company, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2010, a copy of the foregoing was electronically filed.

Notice of this filing will be sent to counsel of record for all parties by operation of the Court's

Electronic Case Filing system.  Parties and their counsel may access this filing through the

Court's Electronic Case Filing system.

s/ David D. Yeagley
One of the Attorneys for Defendant
The Dannon Company, Inc.
