UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JAMES GEMELAS, On Behalf of Himself and All Others Similarly Situated,<br><br>                            Plaintiff,<br><br>   vs.<br><br>THE DANNON COMPANY, INC.,<br><br>                          Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:08-cv-00236<br><br><u>CLASS ACTION</u><br><br>Judge Dan Aaron Polster |

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, FOR ATTORNEYS'
FEES AND EXPENSES, AND RESPONSE TO OBJECTIONS

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)

THE PISCITELLI LAW FIRM
FRANK PISCITELLI
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
216/931-9925 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
JONATHAN M. STEIN
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

CLIMACO, WILCOX, PECA, TARANTINO
  & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
SCOTT D. SIMPKINS
DAVID M. CUPPAGE
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/621-8484
216/771-1632 (fax)

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II.  HISTORY OF THE LITIGATION .......................................................................5

    A.  Initial Investigations and Filings.................................................................5

    B.  The Parties Conducted Substantial Discovery – Producing and Reviewing Approximately 1 Million Pages of Documents .........................................6

    C.  The Parties Engaged in Significant Motion Practice ...................................7

    D.  Plaintiff's Motion for Class Certification ...................................................7

    E.  The Settlement Negotiations, Preliminary Approval, and Class Notice.................8

III.  THE SETTLEMENT TERMS.................................................................................9

    A.  Settlement Relief.........................................................................................9

        1.  Cash Payments..................................................................................10

        2.  Injunctive Relief...............................................................................11

            a.  Activia branded products ...........................................................11

            b.  DanActive branded products........................................................12

IV.  THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ...........................13

    A.  The Standard for Final Approval of a Class Settlement ........................................13

    B.  The Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement, and the Risks, Expense, and Delay of Further Litigation All Support Approval of This Settlement..........14

    C.  The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proofs Supports Approval of This Settlement....................15

    D.  The Amount of Discovery Completed and the Character of the Evidence Uncovered Supports Approval of This Settlement ................................................16

    E.  Whether the Settlement Is Fair to the Unnamed Class Members ..........................17

    F.  Opt-Outs and Objections Raised by Class Members – *"The Remoras Are Loose Again"* .................................................................................................17

|  |  |  | Page |
|---|---|---|---|

G. The Settlement Is the Product of Arms-Length Negotiations ................................ 19

H. The Settlement Is Consistent with the Public Interest ........................................... 19

V. CLASS COUNSELS' UNOPPOSED REQUEST FOR FEES AND REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED ......... 20

    A. Courts Give Substantial Deference to the Agreement Between the Parties About Fees in Class Action Settlements ................................................................. 20

    B. Courts Have Regularly Approved Negotiated Fee Arrangements as Part of Class Action Settlements .................................................................................. 22

    C. Plaintiffs' Counsel Are Entitled to Be Compensated for Creating a Common Benefit for the Class ................................................................................ 23

        1. Under the Common Benefit Doctrine, the Preferred Method of Calculating Attorneys' Fees Is as a Percentage of the Overall Class Benefit ...................................................................................................... 23

        2. The Requested Fees Are Reasonable and Warranted ................................ 24

            a. The Value of the Benefit Obtained ................................................ 25

            b. The Public Interest ........................................................................ 26

            c. The Contingent Nature of the Fee .................................................. 26

            d. The Value of the Services on an Hourly Basis .............................. 27

            e. The Complexity of the Litigation .................................................. 27

            f. The Professional Skill and Standing of Respective Counsel ......... 28

    D. Class Counsels' Litigation Expenses Should Be Reimbursed .............................. 28

VI. REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS ................................................................................................................. 29

VII. THE FEW OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED ................................................................................................. 30

    A. Objectors Carry a Heavy Burden of Upsetting a Settlement that Has Already Been Preliminarily Approved .................................................................. 30

**Page**

B.  Professional Objections, Like the Objections by the Cochran Group,
     Attempt to Extort Money from the Parties ...........................................................31

    1.  The Professional Objectors Attempt to Characterize This
     Settlement as a Coupon Settlement under 28 U.S.C. §1712 Is
     Unfounded and Would Invite Error ........................................................34

    2.  The Professional Objectors' Request for Fees Should Be Denied,
     As It Has Been Denied in the Past ..........................................................36

C.  The Other Objections Misstate the Settlement and Its Value ...............................37

D.  Objectors James Wilson and Clyde Padgett Are Unaware of the History of
     the Litigation .........................................................................................................39

VIII.  CONCLUSION .....................................................................................................................39

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abrams v. Lightolier, Inc.*,
  50 F.3d 1204 (3d Cir. 1995) ................................................................29

*Adams v. Standard Knitting Mills, Inc.*,
  No. 8052, 1978 U.S. Dist. LEXIS 20317 (E.D. Tenn. Jan. 6, 1978) ......................................24

*Ayers v. Sutliffe*,
  No. 1:90-cv-00650-CBR (S.D. Ohio) ................................................................24

*Bailey v. Great Lakes Canning, Inc.*,
  908 F.2d 38 (6th Cir. 1990) ................................................................31

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395, 2006 U.S. Dist. LEXIS 71072
  (D. Mass. Aug. 22, 2006) ................................................................18, 31

*Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  640 F. Supp. 697 (S.D. Ohio 1986) ................................................................24

*Bednarz v. The Dannon Company, Inc.*,
  No. 09-cv-00077 (D. Conn. Jan. 20, 2009) ................................................................6

*Bert v. AK Steel Corp.*,
  No. 02-cv-467, 2008 U.S. Dist. LEXIS 111711
  (S.D. Ohio Oct. 23, 2008) ................................................................19

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................23

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ................................................................25

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio. 2001) ................................................................17

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................24

*Camp v. Progressive Corp.*,
  No. Civ.A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079
  (E.D. La. Sept. 23, 2004) ................................................................29

*Carrabba v. Randalls Food Mkts., Inc.*,
  191 F. Supp. 2d 815 (N.D. Tex. 2002) ................................................................29

- iv -

**Page**

*Chesher v. Neyer*,
No. 1:01-CV-00566, 2007 WL 4553908
(S.D. Ohio Dec. 19, 2007) ...................................................................20

*Cleveland Area Bd. of Realtors v. Euclid*,
965 F. Supp. 1017 (N.D. Ohio 1997)..................................................28

*Dowdell v. Apopka*,
698 F.2d 1181 (11th Cir. 1983) ...........................................................28

*Dukes v. Wal-Mart*,
509 F. 3d 1168 (9th Cir. 2007) ............................................................15

*Eisen v. Carlisle & Jacqueline*,
417 U.S. 156 (1974).............................................................................26

*Elkins v. Equitable of Iowa*,
No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557
(M.D. Fla. Jan 28, 1998)......................................................................21

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) ..................................................24, 30

*Fielder v. Credit Acceptance Corp.*,
No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) .......................34

*Flinn v. FMC Corp.*,
528 F.2d 1169 (4th Cir. 1975) .............................................................38

*Franks v. Kroger Co.*,
649 F.2d 1216 (6th Cir. 1981) ...............................................................1

*Geier v. Sundquist*,
372 F.3d 784 (6th Cir. 2004) ...............................................................36

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982).............................................................................35

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ...................................................................28

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).......................................................................22, 25

*Horne, et al. v. The Dannon Company, Inc.*,
No. 09-CV-0011 (E.D. Ark. Jan. 9, 2009)............................................6

- v -

**Page**

*Howes v. Atkins,*
668 F. Supp. 1021 (E.D. Ky. 1987) ..................................................................24

*In re AT&T Corp. Sec. Litig.,*
455 F.3d 160 (3d Cir. 2006) ("*AT&T I*") .......................................................31

*In re AT&T Corp. Sec. Litig.,*
No. 00-5364 (GEB), 2006 WL 2786945
(D.N.J. Sept. 26, 2006) ...............................................................5, 31, 32, 37

*In re Auto. Refinishing Paint Antitrust Litig.,*
MDL 1426, 2004 U.S. Dist. LEXIS 29162
(E.D. Pa. Oct. 13, 2004).......................................................................5, 33

*In re Beverly Hills Fire Litig.,*
639 F. Supp. 915 (E.D. Ky. 1986) ..........................................................24, 27

*In re Bristol-Myers Squibb Sec. Litig.,*
No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007).......................................33

*In re Broadwing, Inc. ERISA Litig.,*
252 F.R.D. 369 (S.D. Ohio 2006) .................................................................19

*In re Cardinal Health, Inc. Securities Litigation,*
550 F. Supp 2d 751 (S.D. Ohio 2008) ........................................................34, 36

*In re Catfish Antitrust Litig.,*
939 F. Supp. 493 (N.D. Miss. 1996)..............................................................30

*In re Charter Commc'ns, Inc., Secs. Litig.,*
4:02-CV-1186 CAS, 2005 WL 4045741
(E.D. Mo. June 30, 2005).........................................................................34

*In re Cincinnati Gas & Elec. Co. Sec. Litig.,*
643 F. Supp. 148 (S.D. Ohio 1986) ...............................................................24

*In re Cincinnati Microwave, Inc. Sec. Litig.,*
No. 1:95-cv-00905-HJW-TSH (S.D. Ohio Mar. 21, 1997) ......................................24

*In re Cont'l Ill. Sec. Litig.,*
962 F.2d 566 (7th Cir. 1992) .....................................................................22

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
130 F.R.D. 366 (S.D. Ohio 1990).................................................................24

- vi -

**Page**

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)....................................................................................24

*In re Granada P'ship Sec. Litig.*,
    803 F. Supp. 1236 (S.D. Tex. 1992) ...................................................................30

*In re Lease Oil Antitrust Litig. (No. II)*,
    186 F.R.D. 403 (S.D. Tex. 1999), *reversed on other grounds*,
    570 F.3d 244 (5th Cir. 2009) ...............................................................................30

*In re Nationwide Fin. Servs. Litig.*,
    No. 08-00249, 2009 U.S. Dist. LEXIS 126962
    (S.D. Ohio Aug. 18, 2009)............................................................................17, 19

*In re Nord Res. Corp. Sec. Litig.*,
    No. 3:90-cv-00380-WHR
    (S.D. Ohio Dec. 9, 1994) ....................................................................................24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    588 F.3d 24 (1st Cir. 2009).................................................................................38

*In re Rio Hair Naturalizer Products Liab. Litig.*,
    MDL No. 1055, 1996 WL 780512 (E.D. Mich. Dec. 20, 1996)......................21, 26

*In re Structural Dynamics Research Corp. Sec. Litig.*,
    No. 1:94-cv-00630-HJW (S.D. Ohio Mar. 22, 1996) ..........................................24

*In re Telectronics Pacing Sys., Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001) .....................................................1, 14, 16

*In re UnitedHealth Group PSLRA Litig.*,
    643 F. Supp. 2d 1107 (D. Minn. 2009).....................................................4, 18, 32

*In re Valley Sys. Sec. Litig.*,
    No. 5:92-cv-2124- SHB ......................................................................................24

*In re Wal-Mart Wage & Hour Employment Practices Litig.*,
    MDL 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010)................................4, 32, 33

- vii -

**Page**

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ............................................................20, 22

*Knafla v. The Dannon Company, Inc.*,
    No. 08-cv-04940 (D. Minn. Aug. 15, 2008) ...................................................6

*Kogan v. AIMCO Fox Chase*,193
    F.R.D. 496 (E.D. Mich. 2000) ...............................................................24

*Lonardo v. Travelers Indem. Co.*,
    No. 1:06-CV-962, 2010 WL 1416698
    (N.D. Ohio Mar. 31, 2010) ......................................................... *passim*

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    671 F. Supp. 819 (D. Mass. 1987) ...........................................................22

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007).................................................................35

*Meyers v. Abbott Laboratories*,
    No. 97-C-612 (5th Cir. Ct. Davidson County, Tenn. Mar. 26, 1999).....................24

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970).........................................................................23

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) ..........................................................29

*Moulton v. United States Steel. Corp.*,
    581 F.3d 344 (6th Cir. 2009) ...............................................................35

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................38

*Park, et al. v. The Dannon Company, Inc.*,
    No. 08-81147-CIV (S.D. Fla. Oct. 8, 2008) ...................................................6

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .....................................................33

*Purdie v. Ace Cash Express, Inc.*,
    No. Civ.A. 301CV1754, 2003 WL 22976611
    (N.D. Tex. Dec. 11, 2003) ..................................................................30

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974) ..............................................................25

- viii -

**Page**

*Rawlings v. Prudential-Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ............................................................................................24

*Robinson v. Ford Motor Co.*,
  No. 04-00844, 2005 U.S. Dist. LEXIS 11673
  (S.D. Ohio June 15, 2005) ............................................................................................18

*Shaw v. Toshiba Am. Info. Sys.*, *Inc.*,
  91 F. Supp. 2d 942 (E.D. Tex. 2000).............................................................................31

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ......................................................................................23

*Smillie v. Park Chem. Co.*,
  710 F.2d 271 (6th Cir. 1983) ....................................................................................23, 25

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)........................................................................................24

*Sweet v. General Tire & Rubber Co.*,
  No. C75-181A, 1982 WL 278 (N.D. Ohio Mar. 17, 1982) ...................................................38

*Texas State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*,
  584 F. Supp. 61 (W.D. Tex. 1983)................................................................................28

*UAW v. GMC*,
  497 F.3d 615 (6th Cir. 2007) ........................................................................................38

*UAW v. GMC*,
  No. 05-73991-DT, 2006 U.S. Dist. LEXIS 14890
  (E.D. Mich. Mar. 31, 2006) ....................................................................................15, 16

*Van Horn v. Nationwide Prop. and Cas. Ins. Co.*,
  No. 1:08-CV-605, 2010 WL 1751995 (N.D. Ohio Apr. 30, 2010) .........................................35

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005)........................................................................................33

*Wegrzyniak v. The Dannon Company, Inc.*,
  No. 08-cv-05992 (D.N.J. Dec. 8, 2008).............................................................................6

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992)...............................................................................13, 14

*Wiener v. The Dannon Co., Inc.*,
  255 F.R.D. 658 (C.D. Cal. 2009) ..............................................................................8, 15

**Page**

*Wiener v. The Dannon Company, Inc.*,
 No. CV08-00415-SJO(AGRX) (C.D. Cal.) ................................................................... *passim*

*Williams v. MGM-Pathe Communc'ns Co.*,
 129 F.3d 1026 (9th Cir. 1997) ......................................................................................22

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ...........................................................................13, 14, 30

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
 §1712 ...........................................................................................................................34, 35

Federal Rules of Civil Procedure
 Rule 23 ........................................................................................................................13, 25
 Rule 23(b)(3) ......................................................................................................................8
 Rules 23(c)(2)(B) ...............................................................................................................2
 Rules 23(e) .........................................................................................................................2

## SECONDARY AUTHORITIES

Manual for Complex Litigation, Fourth, §21.643 .......................................................31

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (2d ed. 1993)
 §1.09 .................................................................................................................................23

Herbert Newberg & Alba Conte, *Newberg on Class Actions* (4th ed. 2002)
 §10.15 ...............................................................................................................................38
 §14.03 ...............................................................................................................................27

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, *Recent Trends
 IV: What Explains Filings and Settlements in Shareholder Class Actions* ..............................25

## I.     INTRODUCTION

With the assistance of this Court, the Parties have entered into a nationwide Settlement that provides substantial monetary and non-monetary benefits to Settlement Class Members who purchased The Dannon Company, Inc.'s falsely advertised yogurt products, Activia® and DanActive® (the "Products").[1]   The Settlement, which is the largest of its kind, provides a Settlement Fund of up to $45 million (with a floor of $35 million) from which Class members are eligible to receive reimbursement up to $100 for their purchase of the Products and requires Defendant to implement significant changes to the advertising and labeling at issue.  In negotiating this Settlement, Class Counsel have also worked with counsel at the Federal Trade Commission ("FTC") and various state Attorneys General, which Class Counsel expect will yield still more therapeutic benefits. The Settlement is an excellent one.

For final review of a class action settlement, the Court should view the Settlement "in light of the general federal policy favoring settlement of class actions." *Lonardo v. Travelers Indem. Co.*, No. 1:06-CV-962, 2010 WL 1416698, at *8 (N.D. Ohio Mar. 31, 2010);[2] *see also Franks v. Kroger Co.*, 649 F.2d 1216, 1246 (6th Cir. 1981) (The "law generally favors and encourages the settlement of class actions."); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001) ("there is a strong presumption by courts in favor of settlement").  For the reasons stated herein, this Court should grant final approval of the Settlement.

---

[1]      All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation of Settlement filed September 18, 2009, ("Stipulation" or "Settlement") signed by the Parties on September 17, 2009.  *See* Docket Entry ("D.E.") No. 38.  Amended Stipulations were filed on January 20, 2010 (D.E. No. 42) and May 20, 2010 (D.E. No. 54).

[2]      Emphasis is added and citations are omitted, unless otherwise noted.

Class Counsel were able to force Dannon to provide the Class the very relief Class Counsel sought when they initiated this Litigation.  That is, from the outset of this Litigation, Class Counsel sought both compensation for the Class' purchases of the Products and injunctive relief prohibiting Dannon from continuing to falsely advertise the Products.

With substantial resources and the ability to seek appeals of adverse decisions, Dannon could have protracted any litigation to the point where it could have taken years for the Class to enjoy any recovery, if at all.  During that time Dannon could have continued to falsely advertise the Products, thereby expanding the universe of deceived consumers even wider.

Furthermore, the Settlement was the product of extended, arms-length negotiations between the Parties. Over the course of a year and a half, and with the assistance of this Court and, before that, mediation sessions with a retired Federal Judge, the Parties engaged in settlement negotiations which included competing presentations by their scientific experts regarding the challenged claims at issue.  As demonstrated below, the Settlement Class meets all of the requirements for final certification of a settlement class; and the Class Notice program and Media Plan has satisfied all of the requirements of Federal Rules of Civil Procedure, Rules 23(c)(2)(B) and (e), and has provided the best notice practicable under the circumstances to Settlement Class Members.

Moreover, the award of attorneys' fees agreed to by the Parties and requested by Class Counsel is well within the ranges established by the case law.

Here, Class Counsel have prosecuted the Dannon Lawsuits on a wholly contingent basis, accruing over $7 million in attorneys' fees.[3]  Thus, the $10 million agreed-to award of attorney's

---

[3]     Attached hereto are Plaintiffs' Counsel's declarations providing detailed information concerning their respective firms requested attorneys' fees and expenses. *See* Ex. A, (Declaration of Timothy G. Blood ("Blood Declaration" or "Blood Decl.")), Ex. B, (Declaration of Jonathan M. Stein), Ex. C, (Declaration of John R. Climaco), Ex. D, (Declaration of Pamela Gilbert), Ex. E, (Declaration of D. Scott Kalish), Ex. F, (Declaration of David Pastor), Ex. G, (Declaration of Frank

- 2 -

fees requested represents a 1.42 multiplier of Plaintiffs' Counsel's lodestar – or 22% of the total $45 million Settlement Fund or 28.5% of $35 million, without taking into account the value of injunctive relief.  Both this multiplier and the percentage of the Settlement Fund are on the low end  of  the accepted range of attorney awards in class settlements.  Moreover, Plaintiffs' Counsel also incurred nearly $600,000 in uncompensated and necessary out-of-pocket litigation expenses, and the agreed-to request for reimbursement of these expenses is also reasonable.

Moreover, the Settlement has received an overwhelmingly positive response from the Settlement Class.  Despite the size of the Class, there are only 3 opt-outs, and at most 6 objectors.  This positive response further compels final approval.

Of the handful of objections, none of them have merit.  One objection agrees the Settlement be approved, but believes the attorneys' fee amount should be lower than requested because the objector believes almost no work was done before a settlement was achieved.[4]  The objector's counsel failed to do their homework.  As this Court is aware, an enormous amount of work took place before this Settlement was reached.  *See generally* Blood Decl.  In fact, the parties were just months from trial.  This objection collapses when the facts are known.

While perhaps the misfeasance of counsel involved in the Wilson and Farrel Objections can be excused, the acts of the other group of "objectors" should not be.[5]  This group consists of the

---

E. Piscitelli, Jr.) and Ex. H, (Declaration of Scott E. Poynter) (collectively, "Plaintiffs' Counsel's Declarations").

[4]    *See* James Wilson's Notice of Objection and Intention to be Heard With Argument and Supporting Memorandum of Law ("Wilson Objection") (D.E. No. 55).  Another objector, Clyde Farrel Padgett, also objects to Plaintiffs' Counsel's request for attorneys' fees based upon the incorrect assumption that the Dannon Lawsuits were not heavily litigated.  *See* D.E. No. 61 ("Farrel Objection").

[5]    *See* D.E. Nos. 57-60 (collectively, "Cochran Objections").

- 3 -

same lawyers who file the same frivolous objections regardless of the settlement or case, time and again, with the intent of extorting a payment to simply go away.  A sample compilation of the identical objection filed in other cases, as filed here, is attached to the Blood Declaration at Exhibit 1.  Their extortion scheme is simple – they file boilerplate objections, let the trial court overrule them, and then file a notice of appeal, hoping the threat of delay in implementing the settlement will force one or both of the parties to pay them off.  They do not actually litigate anything.  They do not act on behalf of the class, or their clients – who are often, as here, their relatives.  Courts across the country have criticized the hold-up routinely orchestrated by these serial objectors.  Although the literal body of law created by Cochran and his professional objector group is more fully detailed herein, for the sake of context and primacy, it is worth noting the aggressive tone courts have recently been taking when dealing with and rejecting the papers filed by Cochran and his professional objector group:

- *In re UnitedHealth Group PSLRA Litig*., 643 F. Supp. 2d 1107, 1108-09 (D. Minn. 2009):

   The remoras are loose again. The Court has received a motion from attorneys Edward Siegel [and] Edward Cochran . . . (styling themselves "Objectors' Counsel"), seeking an award of fees. Their motion is emphatically denied. . . . These objectors have contributed nothing. Instead, in a pleading which may charitably be described as disingenuous, Objectors' Counsel argue they assisted the Court in finding class counsel's fee request unreasonable. . . . Their suggestion is laughable. If the Court may be permitted an egregious paraphrase of Winston S. Churchill: Seldom in the field of securities litigation was so little owed by so many to so few. . . . Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. . . . Objectors' request and their motion ill-befit attorneys admitted to the bar.  Accordingly, the Court holds, as a matter of fact and law, objectors have conferred no benefit whatsoever on the class or on the Court. Objectors' Counsel are entitled to an award equal to their contribution . . . nothing.

- *In re Wal-Mart Wage & Hour Employment Practices Litig*., MDL 1735, 2010 WL 786513, at *1-*3 (D. Nev. Mar. 8, 2010):

   Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class. . . . In sum, this Court finds that the Appeals taken by Objectors . . . are

- 4 -

frivolous and are tantamount to a stay of the Judgment entered by this Court . . . approving the comprehensive class settlement in this case which provides fair compensation to millions of class members . . . .

- *In re AT&T Corp. Sec. Litig.*, No. 00-5364 (GEB), 2006 WL 2786945, at *1-*2 (D.N.J. Sept. 26, 2006):

Here, Objectors' Counsel fail to show that they improved the Class's recovery in any way. The Court, in its April 22, 2005 decision, rejected each of the Objectors' challenges to the Settlement and to the award of attorneys' fees to Lead Counsel. On May 11, 2005, the Court denied a motion for reconsideration filed by two of the Objectors. On July 20, 2006, the Third Circuit Court of Appeals affirmed the Court's decision, and in doing so, rejected each of the Objectors' arguments on appeal. . . . The objections and the subsequent appeal were without merit and failed to improve the Class's recovery in any manner. Instead, the Objectors' actions appear to have impeded the Class's recovery-their objections and subsequent appeal resulted in wasteful litigation and delayed the distribution of funds to the Class. To date, those funds have not yet been distributed.

- *In re Auto. Refinishing Paint Antitrust Litig.*, MDL 1426, 2004 U.S. Dist. LEXIS 29162, at *13-*16 (E.D. Pa. Oct. 13, 2004):

The fact that [Siegel] has objected to this Fee Petition when neither [Siegel's client] nor [Siegel] ever filed a proof of claim raises serious questions.  Apparently [Siegel's client] has chosen to object to the distribution of counsel fees from a fund in which it has no interest.

As so many other courts have done, these baseless objections should be overruled.

Class Counsel, therefore, respectfully request that this Court enter a final order and judgment: (1) certifying the Class; (2) granting approval of the Settlement, (3) granting the agreed-to award of attorneys' fees and expenses; and (4) granting incentive awards to the named plaintiffs.

## II.    HISTORY OF THE LITIGATION

### A.    Initial Investigations and Filings

Beginning in May 2007 – more than eight months before the first Dannon Lawsuit was filed – members of Class Counsel began investigating the potential claims related to Defendant's false and deceptive marketing and advertising.  Class Counsel conducted an extensive investigation, which included gathering commercials, other marketing materials and substantial scientific literature.  Class Counsel conducted interviews with experts in the relevant scientific fields and

researched Defendant's marketing practices and the emerging probiotic and "functional food" marketing practices.

On January 23, 2008, the first filed Dannon Lawsuit – *Wiener v. The Dannon Company, Inc.*, No. CV08-00415-SJO(AGRX) (C.D. Cal.) – was filed in the United States District Court for the Central District of California.  On January 29, 2008, Plaintiff James Gemelas initiated this Litigation against Defendant in this Court.[6]  The initial complaint in the Dannon Lawsuits was the result of several months of drafting, consultation with scientific experts, and analysis of Defendant's marketing and advertising, and its purported scientific substantiation behind the claims at issue.

Some of Plaintiff's Counsel, along with one of their experts, also met with the FTC to educate the FTC about the growing problem of probiotic and functional food advertising claims, largely pioneered by Dannon.

### B.  The Parties Conducted Substantial Discovery – Producing and Reviewing Approximately 1 Million Pages of Documents

The Parties engaged in extensive discovery throughout the Dannon Lawsuits.  As explained in detail in the Blood Declaration, because of Class Counsel's near daily meet and confers with Defendant's Counsel, repeated motions to compel, and numerous in-person and telephonic discovery hearings, Defendant ultimately was ordered to produced nearly 1 million pages of documents.  In addition, numerous third-parties produced nearly 30,000 pages of documents in response to Class Counsel's subpoenas *duces tecum* and Freedom of Information Act ("FOIA") requests.

---

[6]     Between January 2008 and January 2009, Plaintiffs' Counsel filed five additional similar class actions in various United States District Courts: *Bednarz v. The Dannon Company, Inc.*, No. 09-cv-00077 (D. Conn. Jan. 20, 2009); *Horne, et al. v. The Dannon Company, Inc.*, No. 09-CV-0011 (E.D. Ark. Jan. 9, 2009); *Knafla v. The Dannon Company, Inc.*, No. 08-cv-04940 (D. Minn. Aug. 15, 2008); *Park, et al. v. The Dannon Company, Inc.*, No. 08-81147-CIV (S.D. Fla. Oct. 8, 2008); and *Wegrzyniak v. The Dannon Company, Inc.*, No. 08-cv-05992 (D.N.J. Dec. 8, 2008).

To properly analyze and cull Defendant's large document production under the tight deadlines of the pretrial schedule, Class Counsel organized a huge team of attorneys to review and code documents.  For example, during a particularly intense period of the litigation, Class Counsel hired and directed a team of over 40 attorneys to work full time, seven days a week, reviewing Defendant's documents.  Class Counsel also directed a team of consultants and experts – a marketing professor, a microbiologist, a medical practitioner, a biostatistician, and scientific researchers – to also review and analyze documents.  As a result, Class Counsel has become intimately familiar with the strengths and weaknesses of the Litigation.

### C.    The Parties Engaged in Significant Motion Practice

Beginning on August 25, 2008, and continuing through January 2009, Class Counsel submitted tens of briefs and declarations, and hundreds of Defendant's own documents, in support of various motions to compel discovery and compliance against Defendant.  Blood Decl., ¶¶19-43.  Although always civil, the Parties' discovery battles were frequent and hard-fought.  Class Counsel appeared before the Magistrate Judge in *Wiener* both telephonically and in-person on repeated occasions.  Through Class Counsel's motion practice, Defendant was compelled, *inter alia*, to search for and produce documents residing with its French parent corporation, Groupe Danone, and proffer its Chief Executive Officer for deposition.

### D.    Plaintiff's Motion for Class Certification

In connection with the *Wiener* action, on July 28, 2008, Class Counsel filed a motion for class certification.  Defendant opposed the motion on nearly all foreseeable grounds, including attacking the adequacy of the named plaintiff by citing to the transcript from her deposition.  Defendant also attached declarations from three high-level employees, and a declaration from a retained marketing expert who testified regarding a consumer survey Defendant commissioned for purposes of the Dannon Lawsuits.  Likewise, Class Counsel also submitted written testimony from

- 7 -

three of its consultants: a marketing professor; a medical professor, practitioner and researcher; and a claims administration expert.  In a published opinion, dated January 30, 2009, the court found that plaintiff satisfied Rule 23(b)(3)'s predominance and superiority requirements (concluding *inter alia*, that the Products' health benefits claims were material to consumers), but that plaintiff's claim was not sufficiently typical to represent a class of both Activia and DanActive purchasers because she only purchased Activia.  *See Wiener v. The Dannon Co., Inc.*, 255 F.R.D. 658 (C.D. Cal. 2009).

**E.**    **The Settlement Negotiations, Preliminary Approval, and Class Notice**

Beginning on July 14 and 15, 2008, the Parties agreed on formal mediation before United States District Court Judge Dickran M. Tevrizian (Ret.) of JAMS in Los Angeles, California. During these initial full-day mediation sessions, the Parties were accompanied by their respective scientific consultants who made presentations and participated in a question and answer session. The Parties appeared before Judge Tevrizian on another occasion for a full-day – albeit unsuccessful – mediation session, and held numerous telephonic conferences with the mediator.

Awaiting a decision on the fully briefed motion for class certification in *Wiener*, and on the eve of a demanding two-week period of twelve depositions, including that of Defendant's Chief Executive Officer, the Parties began making progress on settlement negotiations in December 2008. On January 23, 2009, the Parties finally executed a Memorandum of Understanding ("MOU") memorializing an agreement to resolve the Dannon Lawsuits on behalf of a nationwide Class.

However, the Parties' settlement negotiations were far from over with the execution of the MOU.  Over the next year, the Parties exchanged no fewer than ten major versions of the stipulation of settlement and accompanying exhibits, and countless minor versions.  Class Counsel also again met with the FTC to update them on the progress of the settlement and explain various aspects of it. On September 18, 2009, the Parties submitted the original Stipulation of Settlement with this Court. But again, the settlement negotiations were not complete.  With the substantial assistance of this

- 8 -

Court, including an in-person conference where Defendant was accompanied by one of its scientific consultants and several telephonic conferences with the Court, the Parties agreed on additional provisions that strengthened the Settlement, clarified certain provisions and provided additional relief for the Class.  On January 20, 2010, the Parties submitted the Stipulation and moved for preliminary approval.

On January 27, 2010, the Court preliminarily certified the following Class for the purposes of this Settlement:

> All persons who purchased in the United States the food products marketed and distributed by Dannon under the brand names of Activia or DanActive, including any variations, formats or line extensions thereof (the "Products") at any time up to the date notice is provided to the Class. Excluded from the Class are Defendant's officers, directors and employees and those who purchased the Products for the purpose of resale.

D.E. No. 43 at 2.  The Court also set a date for final Settlement Hearing, appointed Class Counsel to represent the Class, appointed Plaintiff as class representative for the Class, and directed the Court-appointed Class Action Settlement Administrator to publish the Class Notice and administer Settlement claims.  Pursuant to the Court's January 27, 2010, Order, Class Notice was distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class members.  In addition, the Settlement was widely publicized using Internet banner ads (making an estimated 123,442,323 impressions), press releases, audio news releases, via a Settlement Website (www.DannonSettlement.com), and through a toll-free number. *See* Ex. I, attached hereto (Declaration of Jeanne C. Finegan, APR), ¶¶19-25.  As of June 3, 2010, the Class Action Settlement Administrator has only received 3 opt-outs from the Settlement Class. *Id.*, ¶26.

## III.     THE SETTLEMENT TERMS

### A.     Settlement Relief

The Settlement includes cash payments and non-monetary relief, summarized as follows:

### 1.    Cash Payments

The Settlement provides for cash payments to Settlement Class Members who submit claims. Under the Settlement, Defendant has created a Settlement Fund of up to $45 million.  A Settlement Class member is entitled to obtain up to $100 in cash reimbursement of the amount of money he or she paid for the Products.  Settlement Class Members may recover up to $15 merely by timely submitting a valid Claim Form either by mail or electronically.  Settlement Class Members may recover more than $15 and up to $30 by submitting a valid Claim Form signed under penalty of perjury attesting to the amount of Products purchased.  Settlement Class Members may seek more than $30 and up to $100 by submitting a Claim Form signed under penalty of perjury and providing a register receipt or other sufficient proof of purchase for the amount of Products for which payment is sought.   Under the Claims Protocol (Stipulation, Ex. B), the Class Action Settlement Administrator has broad discretion in determining what constitutes sufficient proof of purchase.  In addition to cash payments to Settlement Class Members, the Settlement Fund will be applied to pay: Class Notice costs and claims administration expenses; necessary taxes earned by the fund; Plaintiffs' Counsel's attorneys' fees and expenses with interest, and class representative incentive awards.

If the total amount of eligible claims plus the other costs exceeds the $35 million, Dannon will pay dollar for dollar additional amounts to pay claims, up to $10 million, for a total fund of $45 million.  In the unlikely event claims plus the other costs exceed $45 million, each claim will be proportionately reduced.

Conversely, if the total amount of payments made by Defendant is less than $35 million, then Defendant will donate food having a total value equal to the difference between the amount of the payments made by Defendant and $35 million, to one or more charities that help feed the poor in the

- 10 -

United States.  Those charities will be jointly chosen by the parties and must be approved by the Court.

### 2. Injunctive Relief

#### a. Activia branded products

Under the Settlement, for all Activia branded products, Dannon is required to remove the words "clinically proven" and "scientifically proven" from all advertisements, including the labels and other packaging.  Instead, it may substitute such language with the phrases "there are a number of clinical studies that show" or "clinical studies show," or similar communication that reasonably conveys the same meaning.

Further, Dannon is required to qualify any advertising claim that Activia branded products "helps regulate the digestive system" with the explanatory statement that the product "helps with slow intestinal transit when eaten daily for two weeks, as part of a balanced diet and healthy lifestyle," or similar language that reasonably conveys the same meaning.

Additionally, Dannon is required to add to the frequently asked questions page of its Activia website and on the inside of product packaging over-wrap (if any) the following statement, or words to the same or similar effect: "Activia® [or *e.g.* Activia® Light] is a food product and not a treatment or cure for any medical disorder or disease.  If you have any concerns about your digestive system, you should consult a healthcare professional."

Dannon also is required to place the correct genus, species and strain designation for *Bifidus Regularis* ("*Bifidobacterium lactis* DN 173-010") in close proximity to the Food and Drug Administration required nutritional label and ingredient list for Activia branded products.  The Food and Agriculture Organization of the United Nations and the World Health Organization recommend that the "[g]enus, species and strain designations" be placed on the label, thereby allowing consumers to know which bacteria the food contains.

- 11 -

For that reason, Dannon also is required to place the correct genus, species and strain designation ("*Bifidobacterium lactis* DN 173-010"), when referring to the probiotic strain on the inside packaging or similarly prominent location at least the first time *Bifidus* Regularis is mentioned on the inside packaging or similarly prominent location of Activia® branded products.

### b.    DanActive branded products

In addition to the relief mentioned above for Activia branded products, for DanActive branded products, Dannon is required to remove the word "IMMUNITY" from the product labeling, packaging, commercials and advertisements of its DanActive branded products.

Similarly, for DanActive branded products, Dannon is also required to remove the words "clinically proven" and "scientifically proven" from the product labeling and packaging and commercials and advertisements of its DanActive branded products; and substitute such language with the phrases "there are a number of clinical studies that show" or "clinical studies show," or similar communication that reasonably conveys the same meaning.

Moreover, Dannon is also obliged to qualify, both on the product and in other advertising, the claims that DanActive "helps strengthen your body's defenses" and/or "helps support the immune system" with the explanatory statement "when eaten regularly as part of a balanced diet and healthy lifestyle", or similar communication that reasonably conveys the same meaning.

Furthermore, pursuant to the Settlement, Dannon is required to add on the frequently asked questions page of its DanActive® website and on the inside of product packaging over-wrap (if any) the following statement, or words to the same or similar effect: "DanActive® [or e.g. DanActive® Light] is a food product and not a treatment or cure for any medical disorder or disease.  If you have any concerns related to your health or diet, you should consult a healthcare professional." Such revisions are important to prevent any misperception that DanActive® provides medicinal-like benefits or that it has been approved by the Food and Drug Administration.  It also advises

- 12 -

customers to seek medical care, rather than simply eat yogurt, if there are any concerns about one's health.

Likewise, Dannon is obliged to place the correct genus, species and strain designation for *L. casei Immunitas*® ("*Lactobacillus casei* DN 114-001") in close proximity to the Food and Drug Administration required nutritional label and ingredient list for DanActive® branded products. Dannon also is required to place the correct genus, species and strain designation ("*Lactobacillus casei* DN 114-001"), when referring to the probiotic strain on the inside packaging or similarly prominent location at least the first time *L. Casei* Immunitas® is mentioned on the inside packaging or similarly prominent location of DanActive® branded products.

## IV.     THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

As demonstrated below, the Settlement fully satisfies the factors for determining the propriety of a class action settlement under Rule 23.

### A.     The Standard for Final Approval of a Class Settlement

To approve a proposed class action settlement, the court must find it to be "fair, adequate and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 140 (W.D. Ky. 1992). In making this overall determination, courts consider the following factors:

> (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;
>
> (2) the risks, expense, and delay of further litigation;
>
> (3) the judgment of experienced counsel who have competently evaluated the strength of their proofs;
>
> (4) the amount of discovery completed and the character of the evidence uncovered;
>
> (5) whether the settlement is fair to the unnamed Class members;
>
> (6) objections raised by Class members;

- 13 -

(7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

(8) whether the settlement is consistent with the public interest.

*Lonardo*, 2010 WL 1416698, at *8-*9 ("While Sixth Circuit courts do not always articulate these factors using this language, . . . the above list includes the factors commonly recognized as relevant. The Court, moreover, 'may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case.'"); *Whitford*, 147 F.R.D. at 140 (and authorities cited therein); *Vukovich*, 720 F.2d at 922-23; *Telectronics*, 137 F. Supp. 2d at 1009.

As demonstrated below, this Settlement fully meets this standard for final approval and, further, should be approved by this Court.

**B.     The Likelihood of Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlement, and the Risks, Expense, and Delay of Further Litigation All Support Approval of This Settlement**

Although Class Counsel are confident about the merits of the case, there are substantial hurdles in prosecuting this case to trial against Dannon.  Dannon, a subsidiary of a multi-national, multi-billion dollar corporation, possesses considerable financial resources, has teams of scientists at its own scientific research facility (and funded at universities), and has retained not one, but two, prominent and large defense firms to prosecute its defense.

The Dannon Lawsuits present a classic "battle of the experts" over the sufficiency of the scientific substantiation for the subject claims, including analyzing state of the art techniques for measuring the effects of strains of bacteria on the human microflora.  On the side of Defendant are scientists from prominent universities with impressive resumes who are willing to engage in junk science that facially appears valid, in return for handsome payments from corporations like Defendant.  Defendant paid millions of dollars to generate outcome determinative studies from these

- 14 -

experts.  Juries are particularly susceptible to undue influence by people with such impressive credentials.  This weighs in favor of approving this settlement.  *See*, *e.g.*, *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("The issue would undoubtedly devolve into a battle of experts whose outcome cannot be accurately ascertained in advance.").

The class certification opinion in *Wiener* details some of the risks that Plaintiff faced in prosecuting Dannon Lawsuits to trial.  Indeed, although the court found that plaintiff satisfied the class certification predominance and superiority requirements, a California statewide class was not certified.  Furthermore, Judge Otero's opinion expressly recognized that Defendant may introduce evidence to rebut the inference of class member reliance on the challenged advertising.  *See Wiener*, 255 F.R.D. at 671.  Somewhat ominously, the opinion also cites the Ninth Circuit's opinion in *Dukes v. Wal-Mart*, 509 F. 3d 1168, 1176 (9th Cir. 2007) for the proposition that the district court may later modify or decertify the class.  *Wiener*, 255 F.R.D. at 671.

On the other hand, with this timely Settlement, there is certain and current relief for the Settlement Class, as opposed to protracted and uncertain litigation.  Moreover, because Class Counsel largely have achieved the compensatory and injunctive relief that they set out to achieve, the prospect of recovering more for the Class after protracted litigation does not outweigh the benefits to that the Class achieved by entering into the Settlement now.

Accordingly, this factor strongly favors final approval.

## C.    The Judgment of Experienced Counsel Who Have Competently Evaluated the Strength of Their Proofs Supports Approval of This Settlement

Class Counsel are well-informed and experienced class action attorneys, and endorse this Settlement.  This compels a finding that the Settlement should be approved.  *UAW v. GMC*, No. 05-73991-DT, 2006 U.S. Dist. LEXIS 14890, at *57 (E.D. Mich. Mar. 31, 2006) (Where "counsel for all parties are reputable practitioners and trial counsel experienced in complex class action litigation .

- 15 -

. . their collective judgment in favor of the Settlement is entitled to considerable weight."). After reviewing and analyzing nearly 1 million pages of Defendant's documents and having retained consultants that are experienced in the relevant subject areas, Class Counsel is well apprised of the strength of its claims. Indeed, as reflected by the firm resumes attached to their concurrently submitted declarations, Class Counsel are comprised of highly experienced and successful plaintiff class action attorneys. Several members of Class Counsel also specialize in consumer protection class actions. The collective judgment of Class Counsel, and only after the lengthy and arduous litigation process, was that this Settlement is in the best interests of the Class. This judgment should be given substantial deference by this Court as Class Counsel are zealous consumer advocates, understand the fiduciary duties involved in class representation, and have histories of achieving success and results on behalf of plaintiff classes that speak for themselves.

### D. The Amount of Discovery Completed and the Character of the Evidence Uncovered Supports Approval of This Settlement

Throughout this litigation, Class Counsel have conducted substantial discovery. *UAW*, 2006 U.S. Dist. LEXIS 14890, at *58-*59; *Lonardo*, 2010 U.S. Dist. LEXIS 33180, at *37-*38 ("[A]nother factor the Court considers in evaluating the Settlement Agreement is the amount and character of the evidence assembled to date."); *Telectronics*, 137 F. Supp. 2d at 1014-15. As detailed in the Blood Declaration, the Parties have engaged in significant discovery, providing Class Counsel with the ability to make a fully informed decision on how to optimally negotiate the Settlement. Class Counsel propounded several sets of discovery requests on Defendant to which it responded (although oftentimes after Order of the court) by producing nearly 1 million pages of documents from its employees involved in all aspects of the Products, from the regulatory department, to marketing and advertising, and scientific development and substantiation. In addition, Class Counsel served seven subpoenas on third-parties involved in the marketing and science behind the Products. Along with two government agencies that provided documents

- 16 -

pursuant to Class Counsel's Freedom of Information Act requests, third-parties produced nearly 30,000 documents in connection with the Dannon Lawsuits.  Plaintiffs' Counsel reviewed analyzed and culled all produced documents, coding them into a fully searchable and indexed electronic document database and selecting the key documents for depositions and trials.

Thus, this factor also strongly favors approval of the Settlement.

### E.  Whether the Settlement Is Fair to the Unnamed Class Members

The Settlement is fair to the unnamed Class members.  The Settlement provides up to $100 in compensation to Settlement Class Members for their purchases for the Products.  Because the Products are purchased at grocery stores, the Parties do not have names, addresses and purchase information that would enable checks to be sent directly to Claimants.  Therefore, Claim Forms had to be submitted.  However, the claim process here is exceedingly simple and can be done completely online at the Settlement Website with a few clicks.  To obtain $15, a Settlement Class Member need only submit a Claim Form, which can be done online or by mail.  To receive $30, the Settlement Class Member need only submit the Claim Form and attest that the information submitted is correct.  For claims over $30 and up to $100, some form of proof of purchase is needed.

Thus, the Settlement utilized a very simple claim process that provided real monetary benefits to Settlement Class Members.

### F.  Opt-Outs and Objections Raised by Class Members – *"The Remoras Are Loose Again"*

The Court should also look at the reaction of Class members.  There were only 3 opt-out requests – a remarkably small number given the size of the Settlement Class.

There were also very few objections.  "The lack of significant objections is powerful evidence of the fairness of a proposed settlement."  *In re Nationwide Fin. Servs. Litig.*, No. 08-00249, 2009 U.S. Dist. LEXIS 126962, at *20 (S.D. Ohio Aug. 18, 2009).  "[A] relatively small number of class members who object is an indication of a settlement's fairness."  *Brotherton v.*

- 17 -

*Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio. 2001).  Furthermore, "[i]n considering the extent and significance of the objections, 'the Court must view the agreement in its entirety, rather than isolating individual components of the agreement for analysis.'"  *Robinson v. Ford Motor Co.*, No. 04-00844, 2005 U.S. Dist. LEXIS 11673, at *16-*17 (S.D. Ohio June 15, 2005).

There have been only been 5 filed objections, and one handwritten objection, attached to the Blood Declaration as Exhibit 3.  While discussed in more detail below, two of the objections are factually incorrect, and the others are frivolous.  Two of the five filed objections – the Wilson and Farrel Objections – are premised on the patently false notion that Class Counsel filed and is attempting to settle the Dannon Lawsuits without any real discovery and contentious litigation.  The three other objections – the Cochran Objections – are made by serial professional objectors who routinely assert the same baseless objections in an attempt to extort money from the Parties in exchange for going away.  As one court observed about serial professional objectors like the Cochran objectors:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements.  The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal).  Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-*4 (D. Mass. Aug. 22, 2006).  Cochran and his group have been specifically recognized as "remoras" whose objections "contributed nothing."  *UnitedHealth*, 643 F. Supp. 2d at 1109.  Ignoring the motives of the Cochran Objectors (an admittedly tough task), the basis for their objections are completely meritless.

The overwhelming approval by Class members favors final approval.

- 18 -

### G.    The Settlement Is the Product of Arms-Length Negotiations

This Settlement was the result of hard-fought and arms-length negotiations before this Court and an independent mediator.  *Nationwide*, 2009 U.S. Dist. LEXIS 126962, at *18-*19 (S.D. Ohio Aug. 18, 2009).  As detailed in the Blood Declaration, although initially unsuccessfully after several mediation sessions, the Parties eventually reached the Settlement after an arduous process of a years' worth of negotiations and the exchange of many versions of stipulations of settlement.  Importantly, the Parties were assisted in the settlement negotiation process by both this Court and a retired Federal Judge during numerous in-person and telephonic mediation sessions.  *Bert v. AK Steel Corp.*, No. 02-cv-467, 2008 U.S. Dist. LEXIS 111711, at *6-*7 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").  The Settlement was also not reached until after Class Counsel had reviewed Defendant's document productions, engaged in contentious class certification briefing, and consulted with numerous experts and consultants.  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006).

Accordingly, this factor weighs in favor of approving the Settlement.

### H.    The Settlement Is Consistent with the Public Interest

A final factor for the Court to consider is the public interest in approving the Settlement. *Lonardo*, 2010 U.S. Dist. LEXIS 33180, at *38-*39. The Settlement here is plainly consistent with the public interest.  As the court observed in *Lonardo*, "[c]lass actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but who individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo*, 2010 U.S. Dist. LEXIS 33180, at *38.  Class Counsel have, *via* the Settlement, prevented Dannon from continuing with falsely advertising the premium-priced Products.  Moreover, *via* the Settlement, Class Counsel

- 19 -

have obtained compensation for members of the public who have been affected by the challenged advertising and have purchased the Products. Because the individual injury inflicted by Defendant's deceptive practices was just several dollars at a time, Class members had no incentive to bring these claims on an individual basis. Because the Settlement helps ensure truthful advertising and provides recovery for small-sum injuries that would have otherwise gone uncompensated, the Settlement is consistent with the public interest.

## V. CLASS COUNSELS' UNOPPOSED REQUEST FOR FEES AND REIMBURSEMENT OF LITIGATION EXPENSES SHOULD BE APPROVED

An award representing 28.5% of the $35 million Settlement Fund and 22% of the $45 million Supplemental Net Settlement Fund is well within the parameters favored by courts in the Sixth Circuit: "The preferred method in common fund cases has been to award a reasonable percentage of the fund, with the percentage awarded typically ranging from 20 to 50 percent of the common fund." *Chesher v. Neyer*, No. 1:01-CV-00566, 2007 WL 4553908, at *2 (S.D. Ohio Dec. 19, 2007).

### A. Courts Give Substantial Deference to the Agreement Between the Parties About Fees in Class Action Settlements

Through skillful and focused litigation, Plaintiffs' Counsel have achieved a Settlement that provides up to $45 million in class-wide relief – without including the value of the injunctive relief. After the material aspects of the Settlement were negotiated, the Parties then negotiated the fee award. Further, the agreed-to fee includes compensation for all *future* services to be rendered by Class Counsel.

The fee negotiations were conducted at arms-length, and only after all material terms of the Settlement had been agreed upon. Blood Decl., ¶72; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees."). Under these circumstances, the Court should give "great weight" to the negotiated

- 20 -

character of the fee in considering the fee request.  *Elkins v. Equitable of Iowa*, No. 96-296-CIV-T-17B, 1998 U.S. Dist. LEXIS 1557, at *99 (M.D. Fla. Jan 28, 1998).

As shown in greater detail below, Class Counsel's request is in any event reasonable and should be approved by the Court because:

- the Settlement is the largest of its kind, making a large sum available to Settlement Class Members;

- Class Counsel undertook the litigation on a completely contingent basis, advancing all expenses and accepting all risk that they may work for years and receive no compensation or reimbursement whatsoever;

- Plaintiffs' Counsel's fee and expense request here is well within the range of acceptable percentages (only 28.5% of $35M or 22% of $45M);

- The requested multiplier on Plaintiffs' Counsel's lodestar is at the low range (only 1.4)

- substantial work remains to be done in the monitoring and implementation of the Settlement; and

- similar fees have been awarded by courts nationwide based on similar or larger percentages of the value provided here.

Given these considerations, it should not be surprising that despite nationwide dissemination of the Class notice, targeted to those that purchase the products, only two sets of objections to the fee and expense request have been lodged.  The infinitesimal number of fee and expense objections is a clear indication of the overwhelming sense by Class Members that the requested fee and expense payment is appropriate, reasonable, and fair.  The Settlement Class is correct: it was only through the efforts of Class Counsel – taken at their own risk – that $45 million in benefits in cash was made available to the Class.  *Cf. In re Rio Hair Naturalizer Products Liab. Litig.*, MDL No. 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996) ("Absent Petitioners' efforts, there would be no fund whatsoever for distribution to the class members.").

- 21 -

**B.    Courts Have Regularly Approved Negotiated Fee Arrangements as Part of Class Action Settlements**

Fee agreements between plaintiffs and defendants in class actions are encouraged, particularly where, as here, the attorneys' fees are negotiated separately from and after all terms of the settlement on behalf of the class have been agreed to by the parties.  *See Williams v. MGM-Pathe Communc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees"); *Johnson*, 488 F.2d at 720.

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the "ideal" toward which the parties should strive: "A request for attorney's fees should not result in a second major litigation.  *Hensley*, 461 U.S. at 437. Ideally, of course, litigants will settle the amount of a fee."  *Id.*; *accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fee); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 829 (D. Mass. 1987) ("The authorities encourage parties situated as those herein to agree as to the amount of counsel fees to be paid.  Whether a defendant is required by statute or agrees as part of the settlement of a class action to pay the plaintiffs' attorneys' fees, ideally the parties will settle the amount of the fee between themselves.").

The Parties followed the recommended procedure here: Class Counsel and Defendant's counsel separated the issues of settlement and fees, negotiating all substantive terms of the Settlement first and deferring discussion of attorneys' fees and expenses until after all substantive terms were in place.  Blood Decl., ¶72.  The fee was negotiated under market conditions: Class Counsel wished to maximize their fees to compensate for their risk, contingency, innovation and creativity; Defendant's counsel had a direct interest in negotiating the lowest amount their clients would be required to pay.

- 22 -

C.      **Plaintiffs' Counsel Are Entitled to Be Compensated for Creating a Common Benefit for the Class**

Attorneys who create a common fund or benefit for a group of persons are entitled to their fees and costs based on the common benefit achieved.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

Acknowledging the importance of awarding commensurate fees in common fund cases, Professor Conte has written:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation.  These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail[ed] to give the ***results obtained*** factor primary consideration.

1 Newberg on Class Actions, §1.09 (2d ed. 1993) (footnote omitted).  Until these Dannon Lawsuits were initiated, Dannon did not intend either to compensate the defrauded consumers or to make the full disclosures concerning its advertising.  It was only through the efforts of Class Counsel that the cash payments and injunctive relief were obtained for the Class.

1.      **Under the Common Benefit Doctrine, the Preferred Method of Calculating Attorneys' Fees Is as a Percentage of the Overall Class Benefit**

The preferred approach to calculating the amount of attorneys' fees in common fund and common benefit cases is to award a percentage of the class benefit.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (for example, in the 9th Circuit "Twenty-five percent is the 'benchmark' that district courts should award in common fund cases."); *Six Mexican Workers v.*

*Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). Indeed, the District of Columbia, the Third and Eleventh Circuits now require use of the percentage method.[7] This Court has discretion to use the percentage method under Sixth Circuit law. *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

### 2. The Requested Fees Are Reasonable and Warranted

Here, Class Counsel's request for fees is approximately 28.5% of the $35 million Settlement Fund, or of the $45 million Supplemental Net Settlement Fund which is equal to a multiplier of just 1.4 of their lodestar to date. This percentage is well within the range historically awarded in class actions in this Circuit and elsewhere.[8] Moreover, this percentage does not take account of the amount of work going forward for which there will be **no** additional compensation.

---

[7]     *See Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1267 (D.C. Cir. 1993); *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).

[8]     Courts throughout the Sixth Circuit consistently award attorneys' fees in class action cases in the range of 20-50%. *See, e.g.*, *Kogan v. AIMCO Fox Chase*,193 F.R.D. 496 (E.D. Mich. 2000) (30% award); *In re Cincinnati Microwave, Inc. Sec. Litig.*, No. 1:95-cv-00905-HJW-TSH, Order and Final Judgment (S.D. Ohio Mar. 21, 1997) (Weber, J.) (awarding 30% of the common fund as fees in settlement of class action); *In re Structural Dynamics Research Corp. Sec. Litig.*, No. 1:94-cv-00630-HJW, Final Judgment and Order (S.D. Ohio Mar. 22, 1996) (Weber, J.) (same, awarding 30%); *In re Nord Res. Corp. Sec. Litig.*, No. 3:90-cv-00380-WHR, Order (S.D. Ohio Dec. 9, 1994) (Rice, J.) (same, awarding 30%); *Ayers v. Sutliffe*, No. 1:90-cv-00650-CBR (S.D. Ohio) (Rubin, C.) (same, awarding 25.5%); *In re Valley Sys. Sec. Litig.*, No. 5:92-cv-2124- SHB, Final Judgment and Order of Dismissal (N.D. Ohio May 16, 1984) (Bell, J.) (same, awarding 30%) ; *Meyers v. Abbott Laboratories*, No. 97-C-612, Memorandum (5th Cir. Ct. Davidson County, Tenn. Mar. 26, 1999) (same, awarding 25%); *Howes v. Atkins*, 668 F. Supp. 1021 (E.D. Ky. 1987) (50% award); *Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 640 F. Supp. 697 (S.D. Ohio 1986) (25% award); *In re Cincinnati Gas & Elec. Co. Sec. Litig.*, 643 F. Supp. 148 (S.D. Ohio 1986) (approx. 15% award); *Adams v. Standard Knitting Mills, Inc.*, No. 8052, 1978 U.S. Dist. LEXIS 20317, at *8 (E.D. Tenn. Jan. 6, 1978) (35.8% award); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (15% award); *In re Beverly Hills Fire Litig.*, 639 F. Supp. 915 (E.D. Ky. 1986) (29.1% award); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) (15.6% award of cash portion of settlement or 2.4 multiplier under lodestar).

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974), the Sixth Circuit set forth six specific factors that the court should consider in assessing a reasonable award from a common fund:

(a)      the value of the benefit rendered to the class;

(b)      society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(c)      whether the services were undertaken on a contingent fee basis;

(d)      the value of the services on an hourly basis;

(e)      the complexity of the litigation; and

(f)      the professional skill and standing of all counsel.

*Id.* at 1196; *see also Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Smillie*, 710 F.2d at 275.  Application of each factor likewise fully supports the 28.5% (or 22%) negotiated award here.

### a.      The Value of the Benefit Obtained

Courts have consistently recognized that the result achieved for the benefit of the class on whose behalf the action was brought is one of the most important factors to be considered in making a fee and expense award.  *See*, *e.g.*, *Hensley*, 461 U.S. at 436.  Plaintiffs' Counsel's success in obtaining benefits for the Class – with a tangible value of up to $45 million – must be considered

---

A Federal Judicial Center Study released in 1996, which covered all class actions in four selected federal district courts, found that as to the size of attorneys' fees "median rates ranged from 27% to 30%."  Thomas E. Willging, Laurel L. Hooper, and Robert J. Niemic, *Symposium: The Institute of Judicial Administration Research Conferences on Class Actions: Class Actions and the Rulemaking Process: An Empirical Analysis of Rule 23 to Address the Rulemaking Challenges* (1996), at 69.  This finding is in line with an analysis of fee awards in class actions conducted from January 1995 to June 1996 by National Economic Research Associates, an economics consulting firm.  Using data from shareholder class actions, the study reports on the central question of attorneys' fees: "Regardless of case size, fees average approximately 32 percent of the settlement." Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions* National Economic Research Associate (November 1996), at 12-13.

- 25 -

nothing less than an unqualified success.  This Settlement is the largest of its kind, and allows all Claimants to receive full relief.  Further, the injunctive relief brings a halt to the practices alleged.

### b.    The Public Interest

Every state in the country has laws against false adverting.  The FTC was created to combat false advertising.  False advertising in food products is also governed by the Food & Drug Administration.  All of this demonstrates that this type of case is in the public interest.  Further, the interest of both the FTC and state Attorneys General in this case further demonstrates that the Dannon Lawsuits and the Settlement is in the public interest.  The benefit to society rendered by Class Counsel in consumer protection class actions such as this are undeniable, and an award of attorneys' fees should reflect this service:

> Without compensation to those who are willing to undertake the inherent complexities and unknowns of consumer class action litigation, enforcement of the federal and state consumer protection laws would be jeopardized.  As the Supreme Court has recognized, without a class action, small claimants individually lack the economic resources to vigorously litigate their rights.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 161 (1974).  Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process.

*Rio Hair*, 1996 WL 780512, at *17.

### c.    The Contingent Nature of the Fee

Plaintiffs' Counsel undertook this Litigation on a purely contingent basis, thereby bearing the full risk of non-recovery.  *Cf. Rio Hair*, 1996 WL 780512, at *18 (recognizing risk entailed in a major investment of attorney time and financial resources over period of nearly two years).  Success in this Litigation was far from a foregone conclusion.  Lost time and effort of over approximately 16,200 hours, valued at over $7 million was not the only risk; Plaintiffs' Counsel also advanced the Class nearly $600,000 in costs.

- 26 -

### d.    The Value of the Services on an Hourly Basis

The magnitude and complexity of this litigation has been substantial.  Investigating and launching such a litigation against a multi-national corporation consumes an enormous amount of Class Counsel's time, labor and financial resources.  The fee and expense declarations submitted confirm the reasonableness of the agreed-to fee under the lodestar/multiplier approach.  *See generally Beverly Hills*, 639 F. Supp. 915 (applying lodestar-multiplier approach).  Here, use of the lodestar approach confirms the fee and expense request to be reasonable.  As of late May or early June 2010, Plaintiffs' Counsel have expended an approximate aggregate 16,206.55 hours of attorney time, valued at over $7 million in ultimately resolving the Dannon Lawsuits.  *See* Plaintiffs' Counsel's Declarations.  The fee declarations submitted concurrently provide detailed breakdowns of attorney and paralegal hours and current rates.

Under the circumstances presented, a negotiated fee award resulting in a multiplier of 1.4 is fully warranted.  In fact, the multiplier is at the low range of multipliers deemed appropriate in other similar cases.  In nationwide class action litigation, multipliers commonly ranged from 1 to 4 and have reached as high as 10.  3 *Newberg* §14.03.  Multipliers far higher than that sought here have been awarded.

### e.    The Complexity of the Litigation

This Litigation presented a complex marketing and advertising campaign developed by an extremely sophisticated company, as well as claims about "probiotic" bacteria on the human digestive and immunity systems.  The subject matter of the science is very complex and largely not yet known.  Dannon and its French parent have spent millions of dollars in scientific research to substantiate advertising claims that are made worldwide.  Class Counsel retained medical doctors, researchers and scientists in order to help explain the intricacies of the bacteria at issue and its effects and lack of effects on human microflora.  In addition to the complexity presented by the underlying

- 27 -

factual matter, the case was procedurally complex because it was litigated in several different jurisdictions and the subject of transfer motions.  Further, to successfully certify a nationwide class in the litigation context it would involve extremely involved choice-of-law determinations.  Thus, the Dannon Lawsuits are fairly categorized as complex.

**f.  The Professional Skill and Standing of Respective Counsel**

As noted above, Class Counsel consists of highly experienced class action counsel with nationwide practices specializing in consumer fraud law and similar areas.  *See* Plaintiffs' Counsel's Declarations (the respective firm resumes are attached as exhibits thereto).

In the other corner, Dannon was represented by three top law firms, two of which are considered to be nationwide powerhouses.  Dannon was also represented by a fourth firm that specializes in representation before the FTC in false advertising cases.  Obviously, defense counsel presented formidable opposition to Class Counsel.  Class Counsel rightly anticipated a superior caliber of legal work performed by counsel for Dannon.  Yet, despite this formidable opposition, Class Counsel were able to achieve a landmark result.

**D.  Class Counsels' Litigation Expenses Should Be Reimbursed**

Class Counsel should be reimbursed for their expenses in litigating this case in the amount of $600,000.  The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients.  *See*, *e.g.*, *Cleveland Area Bd. of Realtors v. Euclid*, 965 F. Supp. 1017, 1023 (N.D. Ohio 1997); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *Dowdell v. Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered) (quoted in *Texas State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*, 584 F.

- 28 -

Supp. 61, 66 (W.D. Tex. 1983)); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1255 (3d Cir. 1995) (expenses are recoverable if it is customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").  The expenses here were reasonable and necessary.  *See* Exs. A-H (Plaintiffs' Counsel's Declarations).

## VI.  REPRESENTATIVE PLAINTIFFS ARE ENTITLED TO INCENTIVE AWARDS

Class Counsel request approval of modest incentive awards to the class representatives involved in the Dannon Lawsuits paid out of the Settlement Fund.  They seek $7,500 for Patricia Wiener and James Gemelas, and $1,000 each for the other plaintiffs who acted as class representatives in the other actions:  Andrea Bednarz, Thomas Horne, Martha Paine, Linda Knafla, Sean Park, Berri Parkoff, Joan Wegrzyniak, and Steven Berube.  Defendant does not oppose this award.[9]

"'Federal courts consistently approve incentive awards in class action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation.'"  *Camp v. Progressive Corp.*, No. Civ.A. 01-2680, Civ. A. 03-2507, 2004 WL 2149079, at *8 (E.D. La. Sept. 23, 2004); *see also Carrabba v. Randalls Food Mkts., Inc.*, 191 F. Supp. 2d 815, 835 (N.D. Tex. 2002) (recognizing practice of awarding incentive awards).  Based on Class Counsel's experience, the amounts requested here are consistent with or below the amounts typically awarded in similar litigation.  *See, e.g., Camp*, 2004 WL 2149079, at *7 (awarding up to $10,000 to each named

---

[9]    One objector contends that the incentive awards would improperly reduce the Settlement Fund.  D.E. No. 61 at p. 4.  But the $23,000 total requested here is trivial compared to the $45 million Settlement Fund.

plaintiff as incentive awards, for a total payment of $102,000); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 449 (S.D. Tex. 1999), *reversed on other grounds*, 570 F.3d 244 (5th Cir. 2009) (awarding named plaintiffs up to $10,000 each for participating in lawsuit); *In re Granada P'ship Sec. Litig.*, 803 F. Supp. 1236, 1247 (S.D. Tex. 1992) (granting request for incentive award of $5,000 to representative class action plaintiffs); *Purdie v. Ace Cash Express, Inc.*, No. Civ.A. 301CV1754, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (awarding the three named plaintiffs a combined incentive award of $16,665); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 504 (N.D. Miss. 1996) (awarding each of four named plaintiffs a $10,000 incentive award).

The incentive awards requested are justified in light of the willingness of the named plaintiffs to devote their time and energy to prosecuting a representative action and reasonable in consideration of the overall benefit conferred to the Dannon's customers, and should be approved. Ms. Wiener and Mr. Gemelas should be awarded more than the others because they devoted more time and effort to the Dannon Lawsuits.  Blood Decl., ¶60 (Describing Ms. Wiener's ongoing involvement in the litigation, including sitting for a full-day deposition, and Mr. Gemelas' involvement which included attending a mediation before the Court.).

## VII. THE FEW OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED

### A. Objectors Carry a Heavy Burden of Upsetting a Settlement that Has Already Been Preliminarily Approved

With respect to settlement objectors, the law is clear that "approval should not be denied 'merely because some class members object to it.'"  *Enterprise Energy Corp.*, 137 F.R.D. at 246. "An individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable."  *Vukovich*, 720 F.2d at 921.  Objectors, alone, carry this burden of demonstrating "that the Settlement is unfair, inadequate or unreasonable."  *Enterprise Energy*, 137 F.R.D. at 247.

The decision of whether to grant final approval of the settlement is committed to this Court's sound

discretion.  *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990).

### B.     Professional Objections, Like the Objections by the Cochran Group, Attempt to Extort Money from the Parties

Courts should be on alert for lawyers who lodge objections to otherwise proper settlements

for the sole purpose of "a fee by lodging generic, unhelpful protests."  *Shaw v. Toshiba Am. Info.*

*Sys.*, *Inc*., 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000).   As the Manual For Complex Litigation,

Fourth, explains:

> Some objections, however, are made for improper purposes, and benefit only
> the objectors and their attorneys (e.g., by seeking additional compensation to
> withdraw even ill-founded objections). An objection, even of little merit, can be
> costly and significantly delay implementation of a class settlement.  Even a weak
> objection may have more influence than its merits justify in light of the inherent
> difficulties that surround review and approval of a class settlement. Objections may
> be motivated by self-interest rather than a desire to win significant improvements in
> the class settlement. A challenge for the judge is to distinguish between meritorious
> objections and those advanced for improper purposes.

Manual for Complex Litigation, Fourth, §21.643.

The court in *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-*4, explained the role of

professional objectors like the Cochran group as follows:

> Repeat objectors to class action settlements can make a living simply by filing
> frivolous appeals and thereby slowing down the execution of settlements.  The larger
> the settlement, the more cost-effective it is to pay the objectors rather than suffer the
> delay of waiting for an appeal to be resolved (even an expedited appeal).  Because of
> these economic realities, professional objectors can levy what is effectively a tax on
> class action settlements, a tax that has no benefit to anyone other than the objectors.

Those in the Cochran group are notorious for this sort of extortion.  For instance, in *In re*

*AT&T Corp. Secs. Litig*., No. 00-5364 (GEB), 2006 WL 2786945, at *1 (D.N.J. Sept. 26, 2006)

("*AT&T II*"), they objected to a class action settlement, which the District Court overruled.  They

then appealed to the Third Circuit Court of Appeals, which affirmed the District Court's denial of the

objections. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170-75 (3d Cir. 2006) ("*AT&T I*").  But

- 31 -

it didn't stop there.  On remand, they then sought attorneys' fees merely for filing the objections, which the District Court adamantly denied, noting, *inter alia*, the delay and inconvenience they caused:

> Here, Objectors' Counsel fail to show that they improved the Class's recovery in any way. The Court, in its April 22, 2005 decision, rejected each of the Objectors' challenges to the Settlement and to the award of attorneys' fees to Lead Counsel. On May 11, 2005, the Court denied a motion for reconsideration filed by two of the Objectors. On July 20, 2006, the Third Circuit Court of Appeals affirmed the Court's decision, and in doing so, rejected each of the Objectors' arguments on appeal. . . . The objections and the subsequent appeal were without merit and failed to improve the Class's recovery in any manner.  Instead, the Objectors' actions appear to have impeded the Class's recovery-their objections and subsequent appeal resulted in wasteful litigation and delayed the distribution of funds to the Class. To date, those funds have not yet been distributed.

*AT&T II*, 2006 WL 2786945, at *2.

Indeed, there is literally a body of law created by the Cochran group, where courts have consistently found their conduct to be improper.  Recently, in *UnitedHealth*, Minnesota District Judge James Rosenbaum described them as follows:

> The remoras are loose again. The Court has received a motion from attorneys Edward Siegel [and] Edward Cochran . . . (styling themselves "Objectors' Counsel"), seeking an award of fees. Their motion is emphatically denied . . . These objectors have contributed nothing. Instead, in a pleading which may charitably be described as disingenuous, Objectors' Counsel argue they assisted the Court in finding class counsel's fee request unreasonable. . . . Their suggestion is laughable. If the Court may be permitted an egregious paraphrase of Winston S. Churchill: Seldom in the field of securities litigation was so little owed by so many to so few. . . . Their goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. . . . Objectors' request and their motion ill-befit attorneys admitted to the bar.  Accordingly, the Court holds, as a matter of fact and law, objectors have conferred no benefit whatsoever on the class or on the Court. Objectors' Counsel are entitled to an award equal to their contribution . . . nothing.

*UnitedHealth*, 643 F. Supp. 2d at 1108-09.

Similarly, just two months ago, in *In re Wal-Mart Wage & Hour Employment Practices Litigation*, Nevada District Judge Philip Pro ordered these lawyers  to post $500,000.00 appeal bonds, each, given his view of their objections:

- 32 -

> Objectors counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class . . . .
>
> In sum, this Court finds that the Appeals taken by Objectors . . . are frivolous and are tantamount to a stay of the Judgment entered by this Court . . . approving the comprehensive class settlement in this case which provides fair compensation to millions of class members . . . .

*Wal-Mart Wage & Hour Employment*, 2010 WL 786513, at *1-*3. That the Cochran group files verbatim objections regardless of the settlement is well known in the class action bar. For example, attached as Exhibit 1 to the Blood Declaration is a declaration submitted in connection with the final approval of another class action. The declaration compiles numerous examples where the Cochran group filed (rejected) objections to settlements on the identical grounds asserted here, filed notices of approval holding up the settlement, and then failed to appear before the court.

Case law is legion with similar such extortive antics by these lawyers. *See*, *e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, No. 06-2964, 2007 WL 2153284, at *1 (3d Cir. July 27, 2007) (affirming District Court's denial of Siegel's objection to class action settlement); Blood Decl., Ex. 1 at Ex. G, *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (regarding objections and holding: "The Court did not find any of the papers filed by Objectors' Counsel to be particularly helpful or to have conferred a benefit on the Class, as they were generic compilations of well-known case law and lacked specific application to this case. In short, they appeared to be standard form arguments filed in other cases."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (overruling objection to class action settlement and finding "no merit" to the argument, *inter alia*, "that the Court should pay the attorneys' fees in installments, or 'stage' the fees"); *Auto. Refinishing Paint*, 2004 U.S. Dist. LEXIS 29162, at *13-*16 ("The fact that [Siegel] has objected to this Fee Petition when neither [Siegel's client] nor [Siegel] ever filed a proof of claim raises serious questions. Apparently [Siegel's client] has chosen to object to the distribution of counsel fees from a

- 33 -

fund in which it has no interest."); *In re Charter Commc'ns, Inc., Secs. Litig.*, 4:02-CV-1186 CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) (rejecting Siegel's objection); Blood Decl., Ex. 1 at Ex. T, *Fielder v. Credit Acceptance Corp.*, No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) (regarding Nelson's motion to intervene, "There is a record here of inconsistent factual assertions and at least one unsupported legal objection in this case. The court does not intend to allow this class action litigation, which affects the rights of over 14,000 class members, to be derailed by uniformed or careless counsel who attempt to intervene at the eleventh hour. Intervention by Hernandez and his purported counsel would present serious risk of disruption to the continued progress of this litigation.  It will not be allowed by this court.").

      **1.**      **The Professional Objectors Attempt to Characterize This Settlement as a Coupon Settlement under 28 U.S.C. §1712 Is Unfounded and Would Invite Error**

The Cochran group and Wilson contend that attorneys' fees should not be determined until after the number of claims has been determined.  This argument fails for three reasons.  First, the objections incorrectly equate this settlement to a coupon settlement under 28 U.S.C. §1712.[10] D.E. Nos. 57 at 4-10, 59 at 3-5, and 60 at 6.[11]  Second, the case law is clear that attorneys' fees should be measured based on the amount of money made available to class members, and not the amount ultimately claimed.  Third, regardless of the amount claimed by Settlement Class Members, the amount left over will be donated in product pursuant to the *cy pres* doctrine.

---

[10]    Notably, the *In re Cardinal Health, Inc. Securities Litigation*, 550 F. Supp 2d 751 (S.D. Ohio 2008) court also denied the opportunistic objectors fees because not only did they fail to add any value to the class, but they clouded the issues.  The same can be said for the opportunistic Cochran group.

[11]    Although Objector James Wilson actually asks this Court to approve the Settlement, he nevertheless improperly contends that the fee award should also be distributed in accordance with 28 U.S.C. §1712. D.E. No. 55 at 5-7.

This is not a "coupon" settlement.  For such settlements, 28 U.S.C. §1712 provides, in pertinent part:

> (a) Contingent fees in coupon settlements.  If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

Claimants receive cash payments – not coupons.  Calculating fees based on the amount claimed is error.  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. We hold that this was error.").  Indeed, in reversing the District Court's decision to award fees based on the claims made, in *Masters*, the Second Circuit examined the District Court's improper treatment of the case as a coupon voucher settlement under 28 U.S.C. §1712 and found that 28 U.S.C. §1712 does not apply outside of the coupon voucher context.  *Masters*, 473 F.3d at 438.[12]

Instead, attorneys' fees are based upon the amount made available to class members, not the amount claimed.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 153 n.7 (1982); *see also Moulton v. United States Steel. Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) ("Claimants, it is true, will in the aggregate receive less than Class Counsel. But that is because just 4,026 class members submitted claims. Except for fees and costs, class members had the first shot at the settlement proceeds – nearly $2.5 million by our estimate – which exceed the amount paid to Class Counsel by some measure.").

---

[12]    Judge O'Malley recognized *Masters* in *Lonardo*, 2010 WL 1751995, at *28-*29, as did Judge Gwin in *Van Horn v. Nationwide Prop. and Cas. Ins. Co*., No. 1:08-CV-605, 2010 WL 1751995, at *7-*8 (N.D. Ohio Apr. 30, 2010).  However, unlike the settlements reviewed by Judges O'Malley and Gwin, the Settlement here contains a *cy pres* provision requiring Dannon to provide the applicable value of the Settlement Fund to charities, as this is not a reversionary settlement. Thus, unlike the analyses of the settlement values assessed by Judges O'Malley and Gwin, the Settlement value here is $45 million.

Beyond that, the amount of the available fund not claimed will not revert back to Dannon but will instead be paid in value to charities to feed the poor by Dannon because of the *cy pres* provision. Complaining that the reversion should be valued differently, or that more product should be donated, amounts to nothing more than an assertion that the settlement should be different, without more. Nit-picking does not constitute a valid objection.

The objectors also fail to acknowledge that Class Counsel is also entitled to a fee for obtaining meaningful injunctive relief, which alone would justify a significant fee award. *See*, *e.g.*, *Geier v. Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004).

### 2. The Professional Objectors' Request for Fees Should Be Denied, As It Has Been Denied in the Past

Objectors are not entitled to fees without conferring an actual benefit to the class.  The *Cardinal Health* court refused to award fees to "opportunistic objectors":

> Yet class actions . . . attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys.  These are the opportunistic objectors.  Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors, which now seem to accompany every major securities litigation.

*Cardinal Health*, 550 F. Supp. 2d at 754.

Unfortunately, the opportunistic objector has appeared in this case as well.  Without contributing anything to the class, the Cochran group requests attorneys' fees for merely filing the very same objections they have unsuccessfully filed in countless class action settlements.  D.E. Nos. 57 at 13 and 59 at 5.  This is an absurd request here, given that the objections have done nothing to alter the settlement and cannot remotely be said to, "have augmented the common fund or otherwise improved a class action settlement."  D.E. No. 57 at 12.  Indeed, Siegel could not even manage to be detail oriented enough to spell his own name correctly, much less manage to contribute in any way

- 36 -

to this settlement.  D.E. No. 57, at 13 (incorrectly signing his own name as "Edwasrd Siegel").  As cited above, the court in *AT&T II* flatly denied the exact same extortionate request for fees by these professional objectors.  *AT&T II*, 2006 WL 2786945, at *2.  This Court should reject the extortionate fee request just as the *AT&T II* court did.

### C. The Other Objections Misstate the Settlement and Its Value

Unable to attack the Settlement on its terms, the objectors mischaracterize it.  One objection complains that the three-year ban is not enough time and should instead be a "permanent" ban.  D.E. No. 60 at 8.  This objector wants a different settlement.  But a settlement is a compromise.  An objection is not valid simply because one wholly uninvolved in the litigation or settlement negotiations steps forward afterwards to claim he wants more.  At any rate, if after the three-year period Dannon advertises yogurt products without scientific substantiation, Dannon will again open itself up to another class action lawsuit.

Another of the objection's complaints is that because many people do not keep purchase receipts or would be (somehow) inconvenienced by attesting under oath to purchases, limiting recovery to up to $100, $30, and $15, depending upon whether Settlement Class members have proof of purchase and attest under oath, is not fair to class members. D.E. No. 60 at 8. Unintentionally, this objection underscores one of the remarkable aspects of this settlement. Claimants may obtain up to $15 for merely filling out a claim form, without providing any proof at all.  Every lawsuit, including class actions, requires the claimant to prove entitlement to relief.  To obtain the highest amount, one must submit sufficient proof that he or she actually purchased the product for which he or she seeks payment.  This is nothing objectionable, and is designed to guard against fraudulent claims.  What is remarkable is that the Settlement Claims Administrator may accept anything as proof of purchase, and not merely register receipts.  *See* Stipulation, Ex. B, §B.9.4. Further, the Class Action Settlement Administrator "shall consider what an ordinary person

- 37 -

would be able to recall concerning the dates and places of Product purchases, amounts paid, and the

precise type, size and amount of Product purchased, taking into account the passage of time."  *See*

Stipulation, Ex. B, §B.9.3.[13]

      The objection also contends that the *cy pres* provision is inadequate because charities cannot

resell the products.  D.E. No. 60 at 8-9.  But this misreads the Settlement, as the products are being

donated to charities that help to feed the poor.  *See* Stipulation, §IV.A.3(a).  The objection also

argues that any *cy pres* award should go to organizations like the industry-run Better Business

Bureau.  D.E. No. 59 at 2-3.  In addition to the absurdity of giving money in a false advertising

action to a corporate-sponsored entity (that fought subpoenas served on it in the Dannon Lawsuits),

helping meet nutritional needs of Americans is a worthy use of *cy pres* in this case, and well within

the Court's discretion.  *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 33 (1st

Cir. 2009) ("Appellate courts review a district court's conclusion that a settlement agreeing to a cy

pres distribution is reasonable for abuse of discretion."); *accord* 3 *Newberg on Class Actions* §10.5

(4th ed. 2002). ("[T]he cy pres . . . distributions serve the objectives of compensation for the class

---

[13]    Further, an objection that the Settlement is for only a portion of the total potential recovery is legally unfounded. It is well-settled law that a settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.  *See Sweet v. General Tire & Rubber Co.*, No. C75-181A, 1982 WL 278, at *8 (N.D. Ohio Mar. 17, 1982) ("[T]he Court also recognizes that simply because a settlement may amount to only a fraction of the potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of settlement."); *see also Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975) ("And because the cash settlement 'may only amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *accord UAW v. GMC*, 497 F.3d 615, 629 (6th Cir. 2007) ("Neither the Federal Rules of Civil Procedure nor the Supreme Court requires that settlements offer a pro rata distribution to class members; instead the settlement need only be fair, reasonable, and adequate.").

- 38 -

(albeit in an indirect manner), access to judicial relief for small claims, and deterrence of illegal behavior.").

Yet another argument contends that because Dannon would have purportedly given refunds to any of its customers which asked for a refund, the relief achieved in the settlement is meaningless. D.E. No. 61 at 2.  This is simply wrong.  "Money back guarantees" are marketing devices, not refund programs.  Further, Dannon's marketing gimmick is fraught with limitations and hurdles, including that Class members can only obtain up to $12 (with proof of purchase).

### D. Objectors James Wilson and Clyde Padgett Are Unaware of the History of the Litigation

Objector James Wilson believes that the Settlement should be approved, but contends the requested fee is too high because "[t]his matter resolved early into the litigation process before any discovery could be conducted by the parties.  At the time of the Settlement the only legitimate work done by class counsel was the drafting of the Amended Complaint."  D.E. No. 55 at 4.  Similarly, objector Clyde Padgett argues that the attorneys' fees are too high, based on the equally false supposition that "class counsel [only] conducted some preliminary discovery, mediated the case, and then struck a settlement with Dannon rather quickly."  D.E. No. 61 at 4.  Wilson and his counsel, and Padgett failed to check their facts before filing an objection.  Had they simply reviewed the very settlement agreement to which they object, or the docket in *Wiener*, they would have known their assumption was incorrect.  *See, e.g.*, Stipulation, §I.A-C (outlining history of Dannon Lawsuits, and explaining that an MOU was not executed until "the Settling Parties engaged in intensive discovery, including the production and review of approximately one million pages of documents from Defendant and third parties, and extensive work with expert witnesses and consultants").

## VIII. CONCLUSION

WHEREFORE, for the foregoing reasons, Class Counsel move this Court for a final order and judgment: (1) certifying the Settlement Class; (2) granting approval of the Settlement,

(3) granting the agreed-to award of attorneys' fees and expenses; and (4) granting incentive awards to the class representatives.

DATED:  June 9, 2010           Respectfully submitted,

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II


                 s/ Timothy G. Blood
                 TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
JONATHAN M. STEIN
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
jstein@rgrdlaw.com
cobrien@rgrdlaw.com

THE PISCITELLI LAW FIRM
FRANK PISCITELLI
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/931-7000
216/931-9925 (fax)
frank@piscitellilaw.com

- 40 -

CLIMACO, WILCOX, PECA, TARANTINO
   & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
SCOTT D. SIMPKINS
DAVID M. CUPPAGE
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH  44113
Telephone:  216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
sdsimp@climacolaw.com
dmcupp@climacolaw.com
pwarn@climacolaw.com

SHEPHERD FINKELMAN MILLER
   & SHAH, LLP
JAYNE A. GOLDSTEIN
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  954/515-0123
954/515-0124 (fax)
jgoldstein@sfmslaw.com

GILMAN AND PASTOR, LLP
DAVID PASTOR
63 Atlantic Avenue, 3rd Floor
Boston, MA  02110
Telephone:  617/742-9700
617/742-9701 (fax)
dpastor@gilmanpastor.com

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
PAMELA GILBERT
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)
jonc@cuneolaw.com
pamelag@cuneolaw.com

EMERSON POYNTER LLP
SCOTT E. POYNTER
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201
Telephone:  501/907-2555
501/907-2556( fax)
scott@emersonpoynter.com

SCOTT KALISH CO., L.L.C.
D. SCOTT KALISH
1468 West 9th Street, Suite 405
Cleveland, OH  44113
Telephone:  216/502-0570
scottkalishcollc@cs.com

Attorneys for Plaintiff

526697_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2010, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the e-mail addresses

denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the

foregoing document or paper via the United States Postal Service to the non-CM/ECF participants

indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on June 9, 2010.


s/ Timothy G. Blood
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)

E-mail:tblood@bholaw.com

526697_1

# Mailing Information for a Case 1:08-cv-00236-DAP

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Timothy G. Blood**
  tblood@bholaw.com,wcameron@bholaw.com

- **Sam P. Cannata**
  samcannata@cannataphillipslaw.com

- **John R. Climaco**
  jrclim@climacolaw.com,gabrun@climacolaw.com

- **Edward W. Cochran**
  edwardcochran@wowway.com

- **Charles H. Cooper , Jr**
  chipc@cooperelliott.com,loris@cooperelliott.com

- **David M. Cuppage**
  dmcupp@climacolaw.com

- **Bruce A. Friedman**
  bruce.friedman@bingham.com

- **Jennifer L. Gardner**
  jgardner@kelley-ferraro.com

- **Angel A. Garganta**
  angel.garganta@aporter.com

- **Jayne A. Goldstein**
  jgoldstein@sfmslaw.com

- **Leslie E. Hurst**
  lhurst@bholaw.com

- **D. Scott Kalish**
  scottkalishcollc@cs.com

- **Trenton H. Norris**
  trent.norris@aporter.com

- **Cullin A. O'Brien**
  cobrien@rgrdlaw.com

- **Thomas J. O'Reardon , II**

toreardon@bholaw.com

- **Frank E. Piscitelli, Jr.**
  frank@piscitellilaw.com,pam@piscitellilaw.com

- **Edward F. Siegel**
  efsiegel@efs-law.com

- **Scott D. Simpkins**
  sdsimp@climacolaw.com

- **Jonathan M. Stein**
  jstein@rgrdlaw.com,e_file_sd@rgrdlaw.com,christinas@rgrdlaw.com,e_file_fl@rgrdlaw.com

- **Michael N. Ungar**
  mungar@ulmer.com,mcrick@ulmer.com

- **David D. Yeagley**
  dyeagley@ulmer.com

# Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Kenneth E. Nelson**
Nelson Law Firm
2900 City Center Square
1100 Main Street
Kansas City, MO 64105

**Clyde Farrel Padgett**
910 McGregor
Lufkin, TX 75904

**J. Darrell Palmer**
Ste. A
603 North Highway 101
Solana Beach, CA 92075

**David Pastor**
Gilman & Pastor
16th Floor
225 Franklin Street
Boston, MA 02110

**Mark Pifko**
Arnold & Porter - Los Angeles
Ste. 4400
777 South Figueroa Street
Los Angeles, CA 90017

**Gina M. Simas**

```
INVALID ADDRESS - Bingham McCutchen
4th Floor
1620 26th Street
Santa Monica, CA 90404
```