UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES GEMELAS, On Behalf of Himself and
All Others Similarly Situated,

       Plaintiff,

       v.

THE DANNON COMPANY, INC.,

       Defendant.

No. CV-08-236

CLASS ACTION

JUDGE DAN A. POLSTER

**PLAINTIFF'S MOTION FOR A BOND TO SECURE PAYMENT
OF COSTS AND ATTORNEYS' FEES ON APPEAL
(FED. R. APP. P. 7)**

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
216/931-9925 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

CLIMACO, WILCOX, PECA, TARANTINO
  & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
SCOTT D. SIMPKINS
DAVID M. CUPPAGE
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/621-8484
216/771-1632 (fax)

[Additional Counsel Appear on Signature Page.]

TABLE OF CONTENTS

Page

I.    INTRODUCTION AND STATEMENT OF FACTS ........................................................1

II.   STANDARD FOR IMPOSITION OF APPELLATE RULE 7 APPEAL BOND ...........4

III.  THE FACTORS WEIGH HEAVILY IN FAVOR OF ORDERING A BOND...............5

      A.    Financial Ability ...................................................................................................5

      B.    The Risk That Appellants Will Not Pay The Costs .............................................5

      C.    The Appeals Lack Merit .......................................................................................6

      D.    Bad Faith Or Vexatious Conduct.........................................................................8

      E.    Public Policy Compels That a Bond be Ordered .................................................9

IV.   A BOND IN THE AMOUNT OF $275,000 SHOULD BE POSTED ...........................10

      A.    A $25,000 Bond Is Reasonable Under the Circumstances to Cover the
            Expenses Required to Litigate the Appeal...........................................................10

      B.    The Appeal Bond Should Include Plaintiff's/Appellee's Fees for
            Responding to the Appeals .................................................................................11

V.    CONCLUSION............................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Adsani v. Miller*,
139 F.3d 67 (2d Cir. 1998)............................................................................................4, 6, 11

*Allapattah Servs., Inc. v. Exxon Corp.*,
No. 91-0986-CV, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ...................................................9

*Auto. Refinishing Paint Antitrust Litig.*,
MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29162
(E.D. Pa. Oct. 13, 2004)...............................................................................................................2

*Azizian v. Federated Dep't Stores, Inc.*,
499 F.3d 950 (9th Cir. 2007) ......................................................................................................4

*Bailey v. Great Lakes Canning, Inc.*,
908 F.2d 38 (6th Cir. 1990) ........................................................................................................7

*Berry v. Deutsche Bank Trust Co. Americas*,
632 F. Supp. 2d 300 (S.D.N.Y. 2009)........................................................................................7

*Downey v. Mortg. Guar. Ins. Corp.*,
313 F.3d 1341 (11th Cir. 2002) ................................................................................................11

*Farris v. Standard Fire Ins. Co.*,
280 Fed. Appx. 486 (6th Cir. 2008)..........................................................................................11

*Fielder v. Credit Acceptance Corp.*,
No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) ..............................................................2

*Fleury v. Richemont N. Am.*,
No. C-05-4525, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ..............................................5, 7

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006) .......................................................................................................2

*In re AT&T Corp. Sec. Litig.*,
No. 00-5364 (GEB), 2006 WL 2786945 (D.N.J. Sept. 26, 2006) ..........................................2, 8

*In re Bristol-Myers Squibb Sec. Litig.*,
No. 06-2964, 2007 WL 2153284 (3d Cir. July 27, 2007)...........................................................2

*In re Broadcom Corp. Sec. Litig.*,
No. SACV 01-275 DT (ML)(x), (C.D. Cal. Dec. 5, 2005)......................................................11

*In re Cardizem CD Antitrust Litig.*,
    391 F.3d 812 (6th Cir. 2004) .......................................................................4, 6, 11

*In re Charter Commc'ns, Inc., Sec. Litig.*,
    4:02-CV-1186 CAS, 2005 WL 4045741
    (E.D. Mo. June 30, 2005).............................................................................2

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    No. MDL 1361, 2003 WL 22417252 (D. Me. Oct. 7, 2003)..........................6, 9, 10

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL No. 1409, 2010 U.S. Dist. LEXIS 27605 (S.D.N.Y. Mar. 5, 2010) .....................6, 8, 10

*In re Diet Drugs*,
    MDL Docket No. 1203, 2001 WL 34133966
    (E.D. Pa. Apr. 06, 2001) ............................................................................10

*In re Initial Pub. Offering Sec. Litig.*,
    No. 21 MC 92, 2010 WL 2884794 (S.D.N.Y. July 20, 2010) .....................5, 6, 8, 10

*In re Ins. Brokerage Antitrust Litig.*,
    MDL Docket No. 1663, Civ. No. 04-5184 (GEB),
    2007 WL 1963063 (D.N.J. July 02, 2007)............................................... 10

*In re Mattel, Inc. Toy Lead Paint Prod. Liab. Litig.*,
    No. 2:07-ml-01897 (C.D. Cal. Dec. 27, 2007) .......................................................3

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 124 (S.D.N.Y. 1999) .................................................................6, 10

*In re Pharm. Ind. Average Wholesale Price Litig.*,
    520 F. Supp. 2d 274 (D. Mass. 2007) .................................................................5, 8

*In re UnitedHealth Group PSLRA Litig*,
    643 F. Supp. 2d 1107 (D. Minn. 2009)..........................................................6, 8

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*,
    MDL No. 1735, 2010 WL 786513 (D. Nev. Mar. 8, 2010)............................................ *passim*

*In re Initial Pub. Offering Sec. Litig.*,
    Master File No. 21MC92(SAS), 2010 U.S. Dist. LEXIS 62968
    (S.D.N.Y. June 18, 2010)....................................................................7, 8, 10

*Pedraza v. United Guar. Corp.*,
    313 F.3d 1323 (11th Cir. 2002) ......................................................................11

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................................2

*Sckolnick v. Harlow,*
  820 F.2d 13 (1st Cir. 1987)...................................................................................................11

*Shaw v. Toshiba Am. Info. Sys., Inc.,*
  91 F. Supp. 2d 942 (E.D. Tex. 2000)........................................................................................2

*Tri-Star Pictures, Inc. v. Unger,*
  32 F. Supp. 2d 144 (S.D.N.Y. 1999).........................................................................................4

*Varacallo v. Mass. Mut. Life Ins. Co.,*
  226 F.R.D. 207 (D.N.J. 2005)...................................................................................................2

*Williams v. Vukovich,*
  720 F.2d 909 (6th Cir. 1983) ...................................................................................................7

*Young v. New Process Steel, LP,*
  419 F.3d 1201 (11th Cir. 2005) ..........................................................................................4, 11

*Zwicker v. Gen. Motors Corp.,*
  No. C-07-291-JCC (MDL No. 1896) (W.D. Wash. Feb. 23, 2007) .........................................3

**STATUTES, RULES AND REGULATIONS**

Ohio Revised Code Chapter 1345.09(F)(2) ...........................................................................4, 11

Fed. R. App. P. 7.................................................................................................................. *passim*

**SECONDARY AUTHORITY**

*Manual for Complex Litigation (Fourth)*...........................................................................2, 3, 11

Plaintiff James Gemelas, for and on behalf of the Class, moves this Court for an order requiring: (1) objectors Wanda Cochran, Robert Faulkner, Grace M. Cannata, Danette Loeffler and Brad Henry and their attorneys, Edward W. Cochran, Francis E. Sweeney, Jr., Edward F. Siegel and Sam P. Cannata; (2) objector Clyde Padgett, who represents himself; and (3) objector Charles Cope and his attorneys, Charles Cooper and Rex Elliott, to post an appellate bond in the amount of $275,000, jointly and severally, consisting of $25,000 for the "pure costs" component of the bond and $250,000 for the plaintiff/appellee's attorneys' fees component. This amount is considerably less than the aggregate $1.5 million bond Messrs. Cochran, Sweeney and Siegel were recently ordered to post under similar circumstances. *See In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735, 2010 WL 786513, at *2 (D. Nev. Mar. 8, 2010).

## MEMORANDUM IN SUPPORT OF MOTION

## I.      INTRODUCTION AND STATEMENT OF FACTS

Since May of 2007, various plaintiffs and their counsel have investigated and engaged in hard fought and protracted litigation, ultimately achieving a settlement widely reported as the largest monetary recovery in a food false advertising case, which also ended the most egregious aspects of Dannon's advertising campaign. Class counsel have also provided significant assistance to the Federal Trade Commission to ensure that further remedial relief is provided.

The settlement has received overwhelming support from the members of the class. There were almost no opt outs and no legitimate objections. Instead, the only objections came from professional objectors. There is no doubt that the objections filed here, which are the same boilerplate objections these objectors filed elsewhere, are meritless. In fact, not a single objection seriously contended that the settlement should not be approved because it did not meet the "fair, adequate and reasonable" standard.

Three groups of objections were filed. The first group consisted of three separate objections, collectively submitted by notorious professional objector lawyers Edward Cochran, Edward Siegel, Kenneth E. Nelson, Darrell Palmer, Sam P. Cannata and Steven P. Cope (collectively, the "Cochran Group"). The tactics of these lawyers in objecting to class action

00020624                                                    1

settlements repeatedly have been denounced by federal judges for engaging in the same conduct they are engaging in here.[1] Yet, since the mid-1990s, they have made a fortune shaking down parties to class-actions.

Cochran, joined by another frequent member of this group, Francis E. Sweeney, Jr., filed a notice of appeal (Dkt. No. 78) on behalf of Wanda Cochran, Robert Faulkner, Grace M. Cannata, Danette Loeffler and Brad Henry, who are only some, but not all of the objectors they represented. Although others in the Cochran Group did not appeal, the Court should not be fooled. These lawyers work together, have fee sharing agreements, and plan strategies to maximize their take. For example, here they may be trying to ensure payment regardless of whether the court awards them a fee, since they will still have an appeal pending in order to extract a payment. After all, the Cochran Group is well aware that the Court may heed the warning in the *Manual for Complex Litigation (Fourth)* that "[f]ee awards made on the basis of

---

[1]    *See, e.g., Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000); *In re AT&T Corp. Sec. Litig.*, No. 00-5364 (GEB), 2006 WL 2786945, at *1 (D.N.J. Sept. 26, 2006) ("*AT&T II*"); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170-75 (3d Cir. 2006) ("*AT&T I*"); *Wal-Mart Wage & Hour Emp't*, 2010 WL 786513, at *1-3; *In re Bristol-Myers Squibb Sec. Litig.*, No. 06-2964, 2007 WL 2153284, at *1 (3d Cir. July 27, 2007) (affirming District Court's denial of Siegel's objection to class action settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (regarding objections and holding: "The Court did not find any of the papers filed by Objectors' Counsel to be particularly helpful or to have conferred a benefit on the Class, as they were generic compilations of well-known case law and lacked specific application to this case. In short, they appeared to be standard form arguments filed in other cases."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (overruling objection to class action settlement and finding "no merit" to the argument, *inter alia*, "that the Court should pay the attorneys' fees in installments, or 'stage' the fees"); *Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2004 U.S. Dist. LEXIS 29162, at *13-16 (E.D. Pa. Oct. 13, 2004) ("The fact that [Siegel] has objected to this Fee Petition when neither [Siegel's client] nor [Siegel] ever filed a proof of claim raises serious questions. Apparently [Siegel's client] has chosen to object to the distribution of counsel fees from a fund in which it has no interest."); *In re Charter Commc'ns, Inc., Sec. Litig.*, 4:02-CV-1186 CAS, 2005 WL 4045741, at *10 (E.D. Mo. June 30, 2005) (rejecting Siegel's objection); *Fielder v. Credit Acceptance Corp.*, No. CV96-24285 (16th Cir. Div. 1 Mo. Sept. 6, 2007) (regarding Nelson's motion to intervene, "There is a record here of inconsistent factual assertions and at least one unsupported legal objection in this case. The court does not intend to allow this class action litigation, which affects the rights of over 14,000 class members, to be derailed by uniformed or careless counsel who attempt to intervene at the eleventh hour. Intervention by Hernandez and his purported counsel would present serious risk of disruption to the continued progress of this litigation. It will not be allowed by this court.").

insignificant or cosmetic changes in the settlement serve to condone and encourage improper use of the objection process." *Manual for Complex Litigation (Fourth)*, §21.643, p. 326.

The second objector who filed a notice of appeal is Clyde Farrell Padgett. Like the Cochran Group, Padgett files boilerplate objections, waits for the court to overrule them, files a notice of appeal, and then uses the threat of the attendant cost and delay to extort money in return for a dismissal of the appeal. He does not show up to argue his objection. Instead, as he did here, he files a letter stating that although he intended to appear, another commitment unexpectedly came up which prevents him from appearing. *See* Blood Decl., Exs. 7 and 11.[2] Recently, Padgett successfully extracted money in return for withdrawing his appeal in *Zwicker v. Gen. Motors Corp.*, No. C-07-291-JCC (MDL No. 1896) (W.D. Wash. Feb. 23, 2007). Currently, in *In re Mattel, Inc. Toy Lead Paint Prod. Liab. Litig.*, No. 2:07-ml-01897 (C.D. Cal. Dec. 27, 2007), he appealed the denial of his boilerplate objection and now seeks payment in return for dismissing the appeal. *See* Blood Decl., ¶¶8-10.

Attorneys Charles Cooper and Rex Elliott appear to be new players, but are following the old playbook. Cooper and Elliott filed a meritless objection based on incorrect facts, skipped the settlement fairness hearing, and then filed a notice of appeal. Class counsel repeatedly called and emailed them, but they never responded. *See* Blood Decl., ¶13. Their primary objection was that class counsel did not do any work in the case. Although class counsel conclusively demonstrated they were incorrect, they nonetheless appealed.

As courts routinely find with professional objectors, a Rule 7 bond is appropriate, and helps offset some of the effects of the costly and significant delays these baseless appeals cause in the implementation of a class action settlement.

---

[2]     "Blood Decl." refers to the Declaration of Timothy G. Blood in Support of Plaintiff/Appellee's Motion for a Bond to Secure Payment of Costs and Attorneys' Fees on Appeal, filed concurrently herewith.

## LAW AND ARGUMENT

## II.    STANDARD FOR IMPOSITION OF APPELLATE RULE 7 APPEAL BOND

Appellate Rule 7 provides:

> In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal.

Rule 7 is designed to "protect the right of appellees." *See Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir. 1998); *accord In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). The authority to impose a bond and to determine its amount lies squarely within the district court's discretion. *Adsani*, 139 F.3d. at 79; *In re Cardizem*, 391 F.3d at 818 (citing *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 757 (D.C. Cir. 1980)); *see also* Fed. R. App. P. 7 Advisory Committee's Note, 1979 Amendment.

In deciding whether to impose a Rule 7 bond, courts typically consider (1) appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; (3) the merits of the appeal; and (4) whether the appellant has shown any bad faith or vexatious conduct. *See, e.g., Tri-Star Pictures, Inc. v. Unger*, 32 F. Supp. 2d 144, 147-150 (S.D.N.Y. 1999).

Where an appeal is taken in bad faith, a district court may also exercise its discretion to impose a bond amount for attorneys' fees likely to be incurred on appeal. *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 959-60 (9th Cir. 2007); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1202-03 (11th Cir. 2005). A district court may also impose a bond in an amount to cover attorneys' fees likely to be incurred on appeal where there is a fee shifting provision in the underlying action. *In re Cardizem*, 391 F.3d at 818. Here, there is a well established record that these appeals are taken for an improper purpose. Further, Ohio Revised Code Chapter 1345.09(F)(2), an underlying statute in this case, contains a fee shifting provision.

Each of these factors weighs heavily in favor of requiring the objectors/appellants and their counsel, Cochran, Sweeney, Siegel, Cannata, Cooper and Elliott, to post a meaningful bond in compliance with Appellate Rule 7.

## III. THE FACTORS WEIGH HEAVILY IN FAVOR OF ORDERING A BOND

### A. Financial Ability

The record demonstrates that the appellants are financially able to post a bond. Since at least the mid 1990s, the Cochran Group has successfully extracted large fees from dozens of class action settlements. *See* Blood Decl., ¶¶2-7. Padgett also has successfully extracted money from his class-action objections. *See* Blood Decl., ¶¶8-9. Additionally, based on class counsel's investigation, Padgett owns three homes. *Id.*, ¶11. Further, by Cooper and Elliott's own admission, they run a successful law practice. On their website, http://cooperelliott.com, Cooper and Elliott brag that "over the past four years Cooper & Elliott's verdicts are consistently among the highest verdicts in the state of Ohio" and then lists recoveries in excess of $19 million. *See* Blood Decl., ¶11.[3]

This showing amply demonstrates the objectors' and their counsel's financial ability to post a bond. Indeed, this factor weighs in favor of a bond if "there is no indication that plaintiff is financially unable to post bond." *Fleury v. Richemont N. Am.*, No. C-05-4525, 2008 WL 4680033, at *7 (N.D. Cal. Oct. 21, 2008) (citation omitted); *In re Pharm. Ind. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (imposing a bond where "[t]here is no evidence that a bond would pose an undue hardship on the objector.").

### B. The Risk That Appellants Will Not Pay The Costs

There is a significant risk that objectors/appellants will not pay the appellee's costs should appellants lose their appeal. When the appellants are dispersed around the country, as in this matter, class counsel would be required to institute multiple collection proceedings to recover their costs. Such a factor weighs in favor of ordering a Rule 7 appeal bond. *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2010 WL 2884794, at *1-5 (S.D.N.Y. July 20, 2010); *Fleury*, 2008 WL 4680033, at *7. Here, Padgett resides in Texas, Wanda Cochran in Kentucky and Brad Henry in Illinois.

---

[3] If the Court believes more evidence on this or any other factor is necessary, class counsel requests leave to take discovery from the appealing objectors and their counsel.

Further, Cochran, Siegel and Sweeney have a documented record of not paying money they owe. They refuse to even post an appeal bond once ordered to do so, and have demonstrated a pattern of ignoring court orders. In both *In re Wal-Mart* and *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2010 U.S. Dist. LEXIS 27605, at *9-10 (S.D.N.Y. Mar. 5, 2010), courts ordered them to file appeal bonds. Each refused, and proceeded with the appeals anyway. They then appealed the appeal bond orders to delay posting the bonds. *See*, Blood Decl., ¶¶6-7. In June 2010, the court in *In re Wal-Mart* fined them $10,000 for contempt. Blood Decl., ¶6.

In June, 2010, Judge Shira A. Scheindlin of the Southern District of New York found that Mr. Cochran and Mr. Siegel appealed the court's settlement approval order in "bad faith," and sanctioned them for violating another court order. *See In re Initial Pub. Offering Sec. Litig.*, Master File No. 21MC92(SAS), 2010 U.S. Dist. LEXIS 62968, at *14 (S.D.N.Y. June 18, 2010); Blood Decl., ¶5.

Finally, the lawyers here are not upstanding members of the bar, but "remoras," suggesting that they will fight collection efforts. *In re UnitedHealth Group PSLRA Litig*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (referring to members of the Cochran Group as "remoras").

## C.    The Appeals Lack Merit

The third factor examines the merits of the appeal. In determining whether to set a bond, a court should primarily take into account the likelihood that the objectors' appeal will be unsuccessful. *See, e.g., In re Cardizem*, 391 F.3d at 817-18; *Adsani*, 139 F.3d at 79 (affirming the district court's imposition of an appeal bond after "look[ing] to the merits of the appeal itself" and determining that appellant's case was found to be "objectively unreasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 129 (S.D.N.Y. 1999) (class member who filed notice of appeal from settlement required to post an appeal bond because the court found the appellant's position "objectively unreasonable"); *In re Compact Disc Minimum*

*Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *2 (D. Me. Oct. 7, 2003) (considering whether appeal "might be frivolous" in deciding whether to impose a bond).

"An approved settlement will not be upset unless the district court has abused its discretion." *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990). Therefore, appellants will be required to demonstrate that this court abused its discretion in finding that the proposed settlement is "fair, adequate and reasonable." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Tellingly, objectors/appellants did not seriously argue that the settlement did not meet this standard. Instead, they raised minor or peripheral issues, arguing that they wanted parts of the settlement to be a little different. Many of their objections were wholly inapposite.

For example, Cooper and Elliott's objection was based primarily on the misconception that no work had been done in the case. Cooper and Elliott had not bothered to review the record before making this objection, and then did not withdraw or modify their objection after the truth was pointed out.

Padgett makes arguments such as: (1) Dannon offered the settlement relief before the lawsuit was filed; (2) although he thinks the injunctive relief is good, it should be for a longer period; (3) class counsel's fees are too much because the case was not litigated; and (4) Dannon did not admit liability as part of the settlement. These objections are baseless on their face.

Courts routinely overrule the Cochran Group's boilerplate objections, as this court did. The objections made here have never previously withstood appellate scrutiny, and are highly unlikely to prevail on appeal now. *See Berry v. Deutsche Bank Trust Co. Americas*, 632 F. Supp. 2d 300, 307-308 (S.D.N.Y. 2009) (ordering bond where his appeal was based on the same failed arguments that were raised before this Court); *Fleury*, 2008 WL 4680033, at *6 (finding the merits of the appeal "informs the likelihood that the appellant will lose and thus be liable for costs.").

**D.    Bad Faith Or Vexatious Conduct**

Finally, the lawyers behind the Cochran objections and Padgett have a documented history of bad faith and vexatious conduct in making class action objections. The Cochran Group was ordered to post a Rule 7 bond because of their history of bad faith and vexatious conduct in appeal from denials of their objections. *See In re Pub. Offering*, 2010 U.S. Dist. LEXIS 62968; *In re Wal-Mart Wage & Hour Emp't*, 2010 WL 786513, at \*1; *In re Currency Conversion Fee*, 2010 U.S. Dist. LEXIS 27605, at \*9-10. Two months ago, in *In re Initial Pub. Offering*, Judge Scheindlin expressly found that Cochran and Siegel's appeal was in bad faith. 2010 U.S. Dist. LEXIS 62968, at \*14; Blood Decl., ¶5.

The court in *In re Wal-Mart Wage & Hour Employment Practices* required Cochran, Sweeney and Siegel to collectively post bonds of \$1.5 million:

> Objectors' counsel have a documented history of filing notices of appeal from orders approving other class action settlements, and thereafter dismissing said appeals when they and their clients were compensated by the settling class or counsel for the settling class.

2010 WL 786513, at \*1. As noted above, they have all but ignored the court's order. *See* Order, filed May 25, 2010, *In re Wal-Mart*, Blood Decl., Ex. 4 (sanctioning each objector and their counsel, including Cochran, \$10,000). Further, as this court may recall, it ordered Cochran's objector client to appear for deposition in *In re Wal-Mart*. However, the client did not appear. *See* Blood Decl., Ex. 5.

The well documented judicial criticism of these serial objectors has been previously outlined to this court. *See* Plaintiff's Motion for Final Approval of Settlement, etc. (Dkt. No. 67) at 3-5, 18, 31-34; *see also In re UnitedHealth Group*, 643 F. Supp. 2d at 1108-09 ("[t]heir [Cochran and Siegel's] goal was, and is, to hijack as many dollars for themselves as they can wrest from a negotiated settlement. . . . Objectors' request and their motion ill-befit attorneys admitted to the bar."); *AT&T II*, 2006 WL 2786945, at \*2 ("The objections and subsequent appeal were without merit and failed to improve the Class's recovery in any manner. Instead, the Objectors' actions appear to have impeded the Class's recovery – their objections and

subsequent appeal resulted in wasteful litigation and delayed the distribution of funds to the Class.").

Cooper and Elliott are copying the actions of these other frivolous objectors. They did not so much as show up at the hearing, but nonetheless appealed from the denial of a clearly baseless objection. Further, as an indication of their bad faith, class counsel have repeatedly attempted to contact Charles Cooper by telephone and email, but neither him, nor anyone from his office, has responded. Blood Decl., ¶3.

These appeals are meritless, and the appellants' conduct is in bad faith and vexatious, justifying an appeal bond.

### E. Public Policy Compels That a Bond be Ordered

Finally, in addition to satisfying the above criteria, "there are public policy reasons to prevent frivolous objectors from threatening to hold up class distributions." *In re Pharm. Ind.*, 520 F. Supp. 2d at 279 (noting that the class members would likely be damaged by the failed appeal). In *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-0986-CV, 2006 WL 1132371, at *1 (S.D. Fla. Apr. 7, 2006), when the district court entered final approval of a class action settlement, it cautioned that any professional objector planning to pursue an appeal of the settlement would be required to post a bond in the amount of $13,500,000 because of the damage such an appeal would inflict on the class:

> I make this conclusion because any appeal of this Order as to the entire class stays both the entry of final judgment on all claims in the Claims Administration Process and payment to all Class members. Accordingly, the highly detrimental impact of an appeal of the settlement agreement as to the entire class renders it appropriate for the Court to require [the objector] to post an appeal bond pursuant to Federal Rule of Appellate Procedure 7.

*Id.* at *18. The objectors/appellants' actions here are brought only in self-interest, and impede the substantial monetary and injunctive relief that will benefit the class and the public. Such selfish and dilatory tactics should not be condoned. At a minimum, the imposition of a Rule 7 appeal bond is necessary to protect the interests of appellees and the class as a whole.

IV.    A BOND IN THE AMOUNT OF $275,000 SHOULD BE POSTED

Plaintiff/appellee requests that the Court order the objectors/appellants and their counsel to post a bond in the amount of $275,000, consisting of a "true cost" component of $25,000 and a fee component of $250,000.

A.    **A $25,000 Bond Is Reasonable Under the Circumstances to Cover the Expenses Required to Litigate the Appeal**

Under the pure litigation costs doctrine, courts routinely apply $25,000 as a minimum benchmark amount of costs for appeals to class action settlements. *See, e.g., In re Initial Pub. Offering*, 2010 WL 2884794, at *5 (assessing $25,000 on settlement objectors for cost aspects of Rule 7 bond); *In re Ins. Brokerage Antitrust Litig.*, MDL Docket No. 1663, Civ. No. 04-5184 (GEB), 2007 WL 1963063, at *3-5 (D.N.J. July 02, 2007) (imposing a "reasonable" $25,000 appeal bond for objectors to class settlement based on line of precedent); *In re Compact Disc*, 2003 WL 22417252, at *2 ($35,000 appeal bond); *In re Currency Conversion Fee*, 2010 U.S. Dist. LEXIS 27605, at *9 ($50,000 appeal bond).

Rule 7 does not require plaintiffs to make any "showing of costs for a bond motion." *In re Ins. Brokerage*, 2007 WL 1963063, at *3. Here, since there are three separate objector appeals and a record on appeal to be amassed from several different federal district courts, an appeal bond of $25,000 to cover pure litigation expenses on appeal is reasonable.

Courts have discretion to increase the bond amount at anytime, since appellate costs involving class action settlements frequently exceed $25,000. *See, e.g., In re Ins. Brokerage*, 2007 WL 1963063, at *3 ("In addition to the printing and administrative costs associated with an appeal . . . it is possible that the Plaintiffs will face different issues from different appellants, which may increase the expenses."); *In re Diet Drugs*, MDL Docket No. 1203, 2001 WL 34133966, at *1 (E.D. Pa. Apr. 06, 2001) (requiring additional $43,000 bond to be posted by objectors appealing settlement approval). Therefore, plaintiffs/appellees reserve the right to seek an increase in this amount, as needed.

**B.      The Appeal Bond Should Include Plaintiff's/Appellee's Fees for
Responding to the Appeals**

The bond should also include $250,000 to cover attorneys' fees in litigating the appeal.
This amount is a reasonable estimate of the fees that will be incurred responding to these
appeals. *See* Declaration of Sanford Svetcov at ¶¶2 and 9.

In addition to pure litigation expenses, courts have discretion to impose appeal bonds to
prevent frivolous, unreasonable or groundless litigation or where there is an underlying fee
shifting provision. *See, e.g., Young*, 419 F.3d at 1202-03 (groundless); *In re Cardizem*, 391 F.3d
at 818 (fee shifting statute). These appeals are clearly groundless. These objectors and their
counsel – the "remoras" – have a long track record of abuse or are patterning their conduct after
these abusive practices. Each has appealed for the very purpose which has been condemned by
courts across the country and in the *Manual for Complex Litigation (Fourth)*. This is precisely
the case where appellate attorneys' fees are warranted. *See Sckolnick v. Harlow*, 820 F.2d 13, 15
(1st Cir. 1987) (affirming district court decision to set bond for costs and attorneys' fees where
court implicitly found appeal might be frivolous and award of sanctions against plaintiff on
appeal was a "real possibility."); *Downey v. Mortg. Guar. Ins. Corp.*, 313 F.3d 1341,1342-44
(11th Cir. 2002); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1331-32 (11th Cir. 2002);
*Adsani*, 139 F.3d at 74-75; *NASDAQ*, 187 F.R.D. at 128; *In re Compact Disc*, 2003 WL
22417252, at *1; *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-275 DT (MLGx), slip op. at 8-
11 (C.D. Cal. Dec. 5, 2005).

Further, the underlying cause of action was brought under the Ohio Consumer Practices
Act. This act contains a statutory fee shifting provision. *See* Ohio Revised Code Chapter
1345.09(F)(2). Therefore, a bond should be required to cover plaintiff's attorneys' fees on
appeal. *In re Cardizem*, 391 F.3d at 818; *accord Farris v. Standard Fire Ins. Co.*, 280 Fed.
Appx. 486, 489 (6th Cir. 2008) ("[T]he district court did not abuse its discretion in ordering
prospective attorneys' fees to be included in the bond, and the order is therefore affirmed").

Accordingly, a bond in the amount of $275,000 should be required to be posted by the objectors/appellants and their attorneys.

## V.    CONCLUSION

The type of conduct that is occurring here should be discouraged.  The objectors' appeal will delay implementation of the settlement, just as a post-verdict appeal would stay execution on a judgment, at substantial expense to the class.  Consequently, plaintiff and the class are entitled to the protection that a Rule 7 bond provides.  The Court may accomplish this task by ordering the appellants and their attorneys to post a bond in the amount of $275,000, jointly and severally.

Respectfully submitted,

DATED:  August 6, 2010

BLOOD HURST & O'REARDON LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II

            s/Timothy G. Blood
            TIMOTHY G. BLOOD

600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com


ROBBINS GELLER RUDMAN
 & DOWD LLP
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
cobrien@rgrdlaw.com

PISCITELLI LAW FIRM
FRANK E. PISCITELLI, JR.
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/931-7000
216/931-9925 (fax)
frank@feplaw.com

CLIMACO, WILCOX, PECA, TARANTINO
    & GAROFOLI CO., L.P.A.
JOHN R. CLIMACO
SCOTT D. SIMPKINS
DAVID M. CUPPAGE
PATRICK G. WARNER
55 Public Square, Suite 1950
Cleveland, OH 44113
Telephone: 216/621-8484
216/771-1632 (fax)
jrclim@climacolaw.com
sdsimp@climacolaw.com
dmcupp@climacolaw.com
pwarn@climacolaw.com

LAW OFFICE OF JONATHAN M. STEIN
JONATHAN M. STEIN
102 E. Palmetto Park Road, Suite 420
Boca Raton, FL 33432
Telephone: 561/961-2244
561/750-5964 (fax)
jstein@jonathansteinlaw.com

SHEPHERD FINKELMAN MILLER
    & SHAH, LLP
JAYNE A. GOLDSTEIN
1640 Town Center Circle, Suite 216
Weston, FL 33326
Telephone: 954/515-0123
954/515-0124 (fax)
jgoldstein@sfmslaw.com

GILMAN AND PASTOR, LLP
DAVID PASTOR
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
Telephone: 617/742-9700
617/742-9701 (fax)
dpastor@gilmanpastor.com

13

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO
PAMELA GILBERT
507 C Street, N.E.
Washington, DC 20002
Telephone: 202/789-3960
202/789-1813 (fax)
jonc@cuneolaw.com
pamelag@cuneolaw.com

EMERSON POYNTER LLP
SCOTT E. POYNTER
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201
Telephone: 501/907-2555
501/907-2556( fax)
scott@emersonpoynter.com

SCOTT KALISH CO., L.L.C.
D. SCOTT KALISH
1468 West 9th Street, Suite 405
Cleveland, OH 44113
Telephone: 216/502-0570
scottkalishcollc@cs.com

Attorneys for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CF/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 6th day of August, 2010.

_s/Timothy G. Blood_
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

00020624

15