UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED
2010 JUN -7 A 10: 08
JON W. SANFILIPPO, CLERK
MAIL-REC'D

| | |
|---|---|
| IN RE: LAWNMOWER ENGINE HORSEPOWER MARKETING AND SALES PRACTICES LITIGATION | Case No. 2:2008-md-01999<br><br>JUDGE LYNN ADELMAN<br><br>OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT THE FAIRNESS HEARING |

### OBJECTION OF CLYDE FARREL PADGETT TO THE PROPOSED SETTLEMENT AND NOTICE OF INTENTION TO APPEAR AT FAIRNESS HEARING

This lawsuit obviously is a RICA conspiracy that contains false marketing statements made by eleven different lawn mower manufacturers and retailers over a sixteen-year period to induce an unsuspecting public to buy underpowered lawnmowers based on horsepower misrepresentations. Clyde Farrel Padgett ("Padgett"), proceeding pro se as a member of the class, a purchaser of both a Craftsman and a Murray walk behind lawnmower during the class period, strongly objects to the Proposed Settlement.

The Proposed Settlement improperly merges settlement payments made by each of the settling Defendant into a single fund, and then pays each class member sending in a claim from that common fund regardless of which Defendant's company sold or manufactured the class member's lawnmower. The mingling of the profits obtained by each Defendant creates an impermissible conflict of interest between class members. Instead of the money which each Defendant has earned going back to the class members from whom the money was taken, the money is being used to pay the customers of other Defendants. Since the MTD

Defendant has not contributed any money whatsoever to the Settlement Fund, the customers of the other Defendants are subsidizing the MID Defendant's customers.

The Proposed Settlement also does not make economic sense. According to Class Counsel, it was decided that MTD would not need to pay any amount of money to settle the Class Action because MTD supposedly disclosed proof which established the liability of all the other Defendants. If the MTD evidence was as strong as suggested, then the proposed settlement amount of $65 million, minus Class Counsel's attorneys' fees, is highly inadequate. The Proposed Settlement also contains other flaws. It demands unnecessary information from class members and then, if they do not have that information then the Proposed Settlement mandates that the funds will be disposed of through some sort of Court ordered cy pies, but the Proposed Settlement does not define what the cy pies will be, and it does not explain why a cy pres should be imposed when class members can be identified. Also, the attorneys' fees are unreasonable, particularly in light of the relatively small amount of money which each class member will receive.

Obviously, there is evidence of collusion in the case. Class Counsel admits they had a private agreement with MTD, such that MTD would not pay any money to resolve this case. It is clearly inappropriate for MTD to be excused from making any contribution to the Settlement Fund, and therefore the Court should reject the Proposed Settlement..

Class Counsel admittedly, entered into an agreement with MTD in 2005, and as part of that agreement, it appears that Class Counsel decided MID would not need to pay any restitution to obtain the benefits of this Settlement. Instead, under the terms of the Proposed Settlement, Class Counsel has required that all of the other settling Defendants pay

various sums into a Settlement Fund which will total $65 million. From this fund, customers of all the Defendants (including MTD customers) will be compensated at a set rate of $25 per push mower and $70 per riding mower. However, before any money will be distributed to class members, Class Counsel will be entitled to deduct fees of up to $14 million plus expenses from the Settlement Fund. The Settling Defendants agreed as part of the settlement to take no position on the issue of attorneys' fees. The Class Notice indicates that, if the number of claimants exceeds the Net Settlement Fund, the recovery of each claimant will be reduced pro rata so that all claims may receive some form of payment.

Mr. Padgett purchased during the class period two different lawnmowers. The first being a Craftsman walk behind mower model #917-388111, with a Briggs & Stratton engine. The lawn mower serial number is #030607M011720, and engine model of #122T02-0845-E1-06081658 The second lawnmower purchased by Mr. Padgett was a Murray walk behind mower model #204210X8C, also with a Briggs & Stratton engine model #10H901-0216-E1-03129179454.:

## THERE IS CONFLICT BETWEEN CLASS MEMBERS.

A class action settlement should not be approved when there is an obvious conflict between different class members, and those class members are represented by the same counsel. When there is an intra-class conflict, a trial court should create sub-classes and appoint separate counsel to represent each of the sub-classes.

Here, there is an obvious conflict between class members. Each Defendant contributing to the Settlement Fund is disgorging the money which that Defendant received improperly from its customers. Class members who are customers of one Defendant thus have

an interest in having that Defendant compensate them, and not class members who are customers of some other Defendant. Since more class claims can result in a lower payout pro rata, the customers of one Defendant do not have an interest in sharing settlement payments made by the company which took their money with customers from other Defendants.

The conflict between the customers of different Defendants is made all the more plain because the Defendant MTD - has not paid anything into the Settlement Fund. It is not right that the lawyers who decided that MTD not need to contribute to the settlement are the same lawyers who represent the other class members, because different class members have different interests. Instead, what the Court should do is require that the MTD customers and the customers of other Defendants all be represented by different counsel. This is the only way to assure that the class settlement represents a fair deal for all the class members. This problem is magnified when the numbers of claims made for settlement benefits causes the settlement value for each class member to decline pro rata on a proportional basis. In other words, if one of the defendants has contributed enough money to cover precisely the number of claims made by its customers, and another company has contributed only enough money to compensate half of its customers, then the overall amount of compensation for the first company's customers will decline. Thus, there is a real and present dispute between the customers of each of the Settling Defendants, a problem made all the worse because of the differences in the contributions by each Defendant.

## THE SETTLEMENT DOES NOT MAKE ECONOMIC SENSE.

Beyond creating an impermissible conflict, the failure of Class Counsel to require MTD to provide any contribution to the Settlement Fund reveals a deeper problem with the proposed

settlement, namely, that the proposed settlement makes little economic sense. If MTD's cooperation in providing documents was as significant as Class Counsel indicates in its filings with the Court, then the value of the case is far, beyond the $65 million obtained from the various defendants. The most important factor in evaluating the fairness of a class action settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. In conducting its analysis, the district court should begin by quantifying the net expected value of continued litigation to the class. To do so, the court should estimate the range of possible outcomes and ascribe a probability to each point on the range. Although a high degree of precision cannot be expected in valuing a litigation of this nature, the district court must nevertheless "insist that the parties present evidence that would enable possible outcomes to be estimated, so that the court can at least come up with a fair valuation.

Here, Class Counsel has claimed that it has obtained devastating evidence of a 16-year conspiracy between the Defendants to defraud lawnmower purchasers. Specifically, Class Counsel supposedly obtained from MTD written proof that it, along with the other Defendants, entered into a joint conspiracy to defraud the public. This evidence enabled Class Counsel to file an amended complaint which alleged RICO violations, among other claims. This RICO cause of action means that if Defendants lose this action, they will need to pay attorneys' fees for the entire class action, and may be subject to treble damages.

If the evidence from MTD is not as devastating to the other Defendants as is alleged, then there is absolutely no reason to approve the Proposed Settlement. After all, the Proposed Settlement releases MTD but does not require it to make any payments whatsoever. However, if the evidence supposedly uncovered by Class Counsel is so devastating, then the

expected value of this litigation is much, greater than $65 million in damages. Class Counsel cannot have it both ways. Either the MTD evidence is so devastating to the Plaintiffs that the value of this case is extremely high, or in the alternative, the MTD evidence was not so devastating in which case, the Proposed Settlement must be rejected, because it does not require MTD to contribute in any way towards the settlement. Under either alternative, the Court must reject the Proposed Settlement.

**EVIDENCE OF IMPROPER COLLUSION.**

In this case, there is ample evidence of an improper community of interest between Class Counsel and at least some of the Defendants. This collusion renders class representation inadequate and is grounds for refusing to accept the settlement. Class Counsel in this case has not tried to hide the collusion, in fact, Class Counsel has sworn to it. According to Class Counsel, in 2005 Class Counsel entered into an agreement with Defendant MTD. The terms of this pact between Class Counsel and Defendant MTD are not hard to fathom: MTD received a promise that Class Counsel would not seek to force MTD to contribute any money to the Settlement Fund in this case, and MTD received the competitive advantage of having the money from other Defendants be used to pay off the claims of MTD customers. Class Counsel was supposed to get approval before it entered into any settlement with the Defendants, and rather than follow the rule, Class Counsel worked out a private deal with MTD, and five years later announced what it had done to the class. It is not right that Class Counsel hid the settlement with MTD from the scrutiny of class members for five years, and then used that unapproved settlement as the basis to force all the other Defendants and class members to subsidize the claims made by MTD customers. It does not seem right that MTD can avoid making any payment whatsoever to the Settlement Fund, and this objector, Clyde Padgett believes that a better

Settlement could be obtained all around, and particularly for MTD customers if MTD was in fact forced to contribute cash to the proposed settlement. It is simply not right that MTD gets a free ride on this settlement, merely because it cut a deal in 2005 with Class Counsel.

## THE CLAIM PROCEDURES ARE UNDULY BURDENSOME

The willingness of Class Counsel to sell short the class in exchange for a large award of attorneys' fees can also be seen in the structure of the claim process, a process which seems singularly designed to prevent class members from making claims. In order to obtain benefits in this case, a class member must fill out a form providing the type of lawnmower purchased, the make and model of the lawnmower, as well as the lawn mower ID form, the engine brand, and the engine model number. Making most claimants provide this information is utterly unnecessary, since, after all, postcards announcing this Proposed Settlement were mailed to most class members. In short, asking class members to provide this information is not necessary, since, for most class members, it was possible to identify the class members and contact them by mail. Forcing class members to search for engine identification numbers on lawnmowers is a meaningless and trivial exercise which does little more than discourage class members from sending in a claim. Moreover, the claim form as drafted means that class members who have thrown out their underperforming mowers at any time over the past sixteen years will be unable to make a claim, even though it is known that these class members are part of the class. The difficulty of the claim process leads to additional problems with regard to the proposed cy pres. Cy pres recovery is thus ideal for

circumstances in which it is difficult or impossible to identify the persons to whom damages should be assigned or distributed. There is no reason, when the injured parties can be

identified, to deny them even a small recovery in favor of disbursement" through a cy pres. Here, the Proposed Settlement fails to identify what will be done as part of the cy pres and thus, the Proposed Settlement fails to provide critical information regarding the distribution of funds. Class Members deserve to know whether unclaimed funds will be used to reduce charges or will be used for project funding which is designed to benefit class members. Class Members also should have an opportunity to comment on the purpose chosen for the unclaimed funds, this is not a matter which should be left up in the air, and to be decided at a later date, without scrutiny from class members. More critically, it does not appear that any cy pres will ever be proper in this case. Here, even if a class member did not send in a claim form, it will not be difficult or impossible to identify them, after all, most of these class members were already contacted by U.S. mail. What really should happen in this case is that all class members who can be identified should receive a payment. Unfortunately, Class Counsel has not chosen to make such relief broadly available to class members.

## THE $14 MILLION SOUGHT IN ATTORNEYS' FEES IS EXCESSIVE.

The proposed fees for Class Counsel of up to $14 million is inappropriate, excessive, and not in keeping with the requirements of proper fee calculation. Attorneys' fees in class actions may be calculated by using the lodestar approach, under which reasonable hourly rates are multiplied by the hours reasonably expended by the attorneys, which is then multiplied by a risk multiplier that is to be determined at the district court's discretion. The amount of attorneys' fees may also be calculated as a percentage of the settlement find. While either approach is appropriate, it is proper for the court to compare the outcomes under both approaches, in order to make sure that we are awarding counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in

the market at the time. Moreover, when calculating attorneys' fees based upon a percentage of the total recovery, the Seventh Circuit has warned that district courts must consider a sliding scale and determine why such a sliding scale would not be appropriate. Here, Class Counsel seeks up to $14 million in attorneys' fees, apparently as a 21.53% percentage fee on the overall recovery of $65 million. However, given the size of the proposed settlement, the district court should apply a sliding scale to the attorneys' fees calculation, and thus, it should not award such a high rate of recovery. Instead, the Court must take testimony regarding the various forms of sliding scale calculations, and must temper the demand for attorneys' fees with the realistic value that would be placed on attorneys' fees in the non-class context. Likewise, the lodestar method suggests that Class Counsel's valuation of attorneys' fees is wildly improper. Class Counsel in this case purports to have expended 21,193 hours in this case, and seeks $14 million in attorneys' fees. This amounts to a lodestar of $660 with no multiplier, an hourly fee which has no evidentiary support, as neither the lodestar method nor the percentage-of-recovery analysis will support Class Counsel's request for attorneys' fees, the Court should reject the settlement.

## REQUEST FOR ORAL ARGUMENT

Clyde Farrel Padgett, acting herein pro se respectfully requests that the Court permit him to address the Court, to further expound upon the arguments set forth within this objection.

**WHEREFORE,** class member Clyde Farrel Padgett prays:

1) That the proposed settlement be rejected in its entirety;
2) The Court order that the class be divided into sub-classes, with each sub-class represented by different counsel; and

3) That the Court grant such other and further relief as it deems just and proper.

Dated: June 3, 2010

Respectfully submitted;

By: _____
Clyde Farrel Padgett, Pro Se
910 McGregor
Lufkin, Texas 75904
(936) 676-8296

## CERTIFICATE OF SERVICE

A copy of the foregoing was served by Certified U.S. Mail upon the following in accord with the Class Action Notice:

> Clerk of the Court
> United States District Court
> Eastern District of Wisconsin
> Milwaukee Division
> 362 United States Courthouse
> 517 East Wisconsin Avenue
> Milwaukee, WI 53202

> Vincent J. Esades
> Heins Mills & Olson, P.L.C.
> 310 Clifton Avenue
> Minneapolis, MN 55403

> Brian M. Sund
> Morrison Fenske & Sund, PA
> 5125 County Road 101, Suite 202
> Minnetonka, MN 55345

By: _____
Clyde Farrel Padgett